Fred L. WRIGHT, Petitioner,

v.

Dolores WRIGHT, Respondent.

Family Court of Delaware,
New Castle County.

Submitted: July 12, 1983.

Decided: Sept. 15, 1983.

Gerald Z. Berkowitz, Wilmington, for petitioner.

Charles K. Keil, Wilmington, for respondent.

GALLAGHER, Judge.

## I. INTRODUCTION

Before the court for decision are the prayers of the parties for ancillary relief.[1] Both parties are seeking division and allocation of marital property. Wife is also seeking alimony, counsel fees and costs. There are several large issues:

(1) How to value husband's dental practice;

(2) How to value husband's profit sharing and pension plan;

---

**1.** Petitioner is referred to as "husband" and respondent as "wife".

(3) Whether the $26,000 received by husband from his parents was a gift or a loan; and

(4) Whether wife is entitled to "reimbursement alimony".

Husband is now seeking a 50–50 division of marital assets. He argues that the marriage was of short duration, that the value of the dental practice should be determined and measured by a recent purchase and sale of the same practice, that he was able to complete his education mainly because of the financial contributions made to him by his parents, that wife will be awarded a substantial sum of money in these proceedings which she could not have earned herself, that wife is employed and is not entitled to alimony, that husband should be permitted to purchase wife's interest in the marital home after deducting a 7% real estate commission and 1% real estate transfer tax[2], and that the $26,000 received from his parents was a loan and not a gift.

Wife wants a 75–25 split favorable to her. She argues that the parties were married for 8½ years, that she worked to maintain the home and put husband through dental school, that she was the only wage earner while husband went through dental school, that she cosigned an educational loan with husband to help finance his education, that husband has greater ability to acquire future assets and income, that her labors allowed him to obtain his professional degree and that she should get more than two years of alimony but is limited to a two year period *unless* the court allows her "reimbursement alimony". Wife wants alimony of $1,500 a month which is the same sum now being paid by husband on the home mortgage, counsel fees and costs and that the court declare the dental license to be a marital asset. With respect to the marital residence, wife wants it sold to a third party because she "couldn't handle" husband living in the house with a new wife.

**2.** *This* suggestion has now been withdrawn by husband. He is content for the house to be

I have relied upon my trial notes, the exhibits, the pre-trial order and memoranda and other submissions of counsel in making my rulings.

## II. FACTUAL BACKGROUND

The parties were married on June 1, 1974, separated on January 1, 1982, and divorced on July 1, 1982.

Husband was born on March 19, 1951. He suffers from no physical or emotional disability. He is a graduate of college and dental school. He is currently a self-employed dentist. His net spendable income for 1979 was $31,000, 1980, $39,000 and 1981, $49,000. He expects to receive $70,-000 in 1983. His gross monthly income is $5,000 and his net monthly income is $3,000. He takes no income tax exemptions. There are no payroll deductions. His monthly expenses appear in the pre-trial order. By orders of this court dated June 29 and August 2, 1982, husband has been paying the monthly mortgage payment.

Husband and wife were married when each was age 24. At the time of the marriage, husband was in his first year of dental school and wife was employed as a secretary by Hercules, Incorporated. At that time, husband had $7,000 in savings and owned an automobile. Husband's parents were supporting him. He was the recipient of an $800 scholarship from the State of Delaware and a student loan. Husband's parents were paying his tuition, other educational expenses and providing him with an allowance of $100 per week.

After husband graduated from dental school he spent two years in the United States Army. During this time wife did not work. He was grossing $15,000 a year plus benefits. He also did work "moonlighting" with two local dentists. Wife returned to work in May of 1979. Husband left the service in June, 1979.

sold and the net proceeds divided.

Wife was born on August 2, 1950. She suffers from hypoglycemia. She is a graduate of business college and has been employed as a secretary by Hercules for seven and one-half years. In 1982 her gross income was $15,264. She expects to receive $15,600 in 1983. Her gross monthly pay is $1,291 and her net monthly pay $937.30. She claims one income tax exemption. There are no unusual payroll deductions. Wife's expenses appear in the pre-trial order. Wife has paid a $500 retainer to her attorney on account of counsel fees.

## III.  ALIMONY

### (1) *Conventional Alimony*

■ In order to determine whether wife is entitled to conventional alimony I must consider the factors set forth in 13 *Del.C.* § 1512(c). I am persuaded from the evidence that wife's own financial resources, even without regard to marital property apportioned to her, will ultimately be sufficient to meet her needs independently, that she does not need additional education having obtained her associate degree in business from Goldey Beacom College in April of 1974, less than 2 months before the marriage, that she cannot expect to enjoy the same standard of living that she enjoyed with husband who is now achieving success as a dentist, that the marriage was not of particularly long duration, that wife is relatively young and in reasonably good physical and emotional condition, that husband could afford to pay alimony to wife and that any alimony paid by husband to wife would be tax deductible.

I am satisfied that wife meets the dependency tests set forth in 13 *Del.C.* § 1512(a) and is *partially* dependent now on husband for support. Significantly, wife's income is insufficient now, short term, to cover the mortgage payment of $1,500 heretofore paid by husband pursuant to court order. Husband shall continue to pay this sum as alimony to wife on the first day of each month with the last payment being due and payable June 1, 1984.

### (2) *Reimbursement Alimony*

■ Wife contends that the court should award her "reimbursement alimony". She argues that when the parties were first married she was earning $7,200 per year and now earns approximately $15,600. She declares that husband, on the other hand, earns about $100,000 per year plus pension and profit sharing and husband's second wife earned $21,000 last year and may receive $24,000 in 1983 plus pension and profit sharing. Based upon these facts and the decision in *Mahoney v. Mahoney,* N.J.Supr., 91 N.J. 488, 453 A.2d 527 (1982), wife argues that the court should declare husband's doctor of dental surgery degree received by him in 1977 as a marital asset and allow her to receive her share of that marital asset in the form of alimony payments labeled "reimbursement alimony".

Husband, in response, *suggests* that reimbursement alimony is not allowable under Delaware law but spends most of his time arguing that the facts in *Mahoney* are distinguishable from the facts of the case *sub judice.* Husband questions whether wife's monetary contributions were made with the "... mutual and shared expectation that both parties to the marriage would derive increased income and material benefits." Husband also questions whether wife's monetary contributions did more than support herself since all the payments for husband's education were provided by his parents, savings from his pre-marital funds and miscellaneous employment.

Since, at the time, wife was only earning $400 per month it really is questionable whether she did more than provide her own support. Further, husband was already attending dental school at the time the parties were married and there is no evidence of any conscious decision by the parties to sacrifice income that they would otherwise have enjoyed in order to permit husband to pursue a professional course of study. Neither did wife sacrifice her own career in order to make it possible for husband to achieve his career goal. Finally, it is true that wife will receive substantial assets in

these proceedings so that it cannot be said that wife failed to share in any of the the benefits derived from husband's professional education.

Even if the facts of the case at bar were essentially the same facts as were considered by the New Jersey court in *Mahoney,* and they are not, I would not hold that an award of reimbursement alimony is allowable under Delaware Law. Delaware has only one statute dealing with alimony and it does not provide for reimbursement alimony. *See,* 13 *Del.C.* § 1512(a). Even though Family Court has considerable discretion in awarding alimony it must still derive its power and authority from statute and without statutory authorization it cannot act. *Husband C. v. Wife C.,* Del.Supr., 391 A.2d 745 (1978); *William H.L. v. Virginia L.L.,* Del.Supr., 457 A.2d 327 (1983). In an order entered by the Supreme Court of Delaware in *M v. M,* Del.Supr., 414 A.2d 821 (1980), it was held that alimony awarded under 13 *Del.C.* § 1512 or former 1518 is not marital property within the meaning of 13 *Del.C.* § 1513 and that the trial court impermissibly included the amount of such an award ($24,000 payable in equal monthly installments over a two year period) in determining the value of marital assets assigned to wife.

It is my conclusion that an award of reimbursement alimony is impermissible under Delaware Law. Therefore, I cannot classify the DDS degree as a marital asset and then distribute to wife her interest in that degree in equal monthly installments of alimony over a defined period of time.

Accordingly, no reimbursement alimony allowance will be made to wife in these proceedings.

## IV. PROPERTY DIVISION

There is surprisingly little difference between the parties with respect to the identity and valuation of marital property. However, sharp disagreement exists with respect to the valuation and distribution of

the dental practice and, to a lesser extent, the pension and profit sharing plan.

### (1) *Miscellaneous Personal Property*

The parties are agreed that the household furniture in kind should be valued at $8,040 and assigned to wife, that the Delaware Cash Reserve investment should be valued at $15,837 and assigned to wife, that husband's Wilmington Trust personal account in the amount of $1,919 should be assigned to husband, that the gold ingots should be valued at $4,095 (but disagree as to the party to whom this asset should be allocated) which I allocate to wife, that the Hercules thrift plan should be valued at $2,749 and assigned to wife, that wife's Delaware Trust account in the amount of $1,800 should be assigned to wife, that the 1979 Honda automobile should be valued at $4,550 and assigned to wife, that the 29.635 shares of Hercules stock should be valued at $1,126 and assigned to wife, that the tax refund of $1,500 should be assigned to wife, that the lawn tractor valued at $600 should be assigned to wife, that the washer/dryer should be valued at $150 and assigned to wife, that the freezer should be valued at $75 and assigned to wife, and that the IRA Delaware Trust account in the amount of $1,500 should be assigned to husband.

Where the parties are in agreement I accept their agreement. Otherwise, I have valued the assets and determined assignment. The actual valuation and allocation of marital property appears on Exhibit A attached hereto.[3]

### (2) *Marital Real Estate*

The parties are agreed that the house and lot at 12 Welwyn Road, Newark, Delaware, has a fair market value of $160,000; that the mortgage balance is $119,000; and that a reduction in fair market value should be made in the amount of $12,800 to cover selling costs at 8%. Thus, the net value is $28,200. Until recently, husband has wanted the house awarded to him while wife wanted it sold and the proceeds divided.

---

**3.** I have attempted to allocate marital property in accordance with the title interests. *See,* *Husband R.T.G. v. Wife G.K.G.,* Del.Supr., 410 A.2d 155, 159 (1979).

Now both parties agree that the house should be sold and the proceeds divided. However, I am going to award the house to wife and she may sell it or not as she sees fit. The alimony payment which is in the same amount ($1,500) as the mortgage payment should permit wife to continue to occupy the house until at least June 30, 1984. She will then have to pay the mortgage installments from her own resources or sell the property as she sees fit. The real estate appears on Exhibit A in the amount of $28,200 allocated to wife.

(3) *Dental Practice*

■ Here is where the main battle lines are drawn. The main skirmish is over valuation since I intend to award the dental practice and its value to husband.

The court heard from Mr. Carl Zenker, a CPA for 27 years, testifying for husband, and Mr. Wesley R. Bumpers, a CPA for 16 years, testifying for wife. It was obvious to me that both accountants would have preferred to value the practice by using as a factor capitalization of earnings. Both accountants recognized, however, that such an approach has been rejected by our Supreme Court in *E.E.C. v. E.J.C.*, Del.Supr., 457 A.2d 688, 694 (1983), wherein it was held that "... earning capacity is irrelevant in determining the present value of marital assets for the purpose of division of marital property under 13 *Del.C.* § 1513" ... and, "wife's technique of valuing Husband's sole proprietorship professional practice based on a capitalization of husband's earnings must be rejected." [4]

Regardless of the opinions of the legal scholars the fact remains that capitalization of earnings has been rejected by our Supreme Court as a method for valuing a professional practice. However, our Supreme Court has not rejected consideration of good will as an element of value. *E.E.C. v. E.J.C., supra.*

In *E.E.C.* the wife's accountant proposed a formula under which fair value is determined by the sum of earnings plus the tangible assets. On the other hand, the husband's accountant proposed a formula for determining the value of a law practice by adding together the actual value of tangible assets plus any work in progress. The formula advanced by husband's accountant was accepted by the court.[5]

The valuation of this dental practice is aided immeasurably by the fact that husband purchased his practice from Dr. William Kates on January 31, 1980. Dr. Kates was planning on moving to California because of his wife's poor health. However, there is no way of telling how his wife's health problems should be factored in the resulting contract price. What is known is that although Dr. Kates had been asking $200,000 for the practice, pursuant to a contract with husband dated January 31, 1980, he sold the practice to husband for $115,000. In addition, husband paid Dr. Kates, by a separate bargain, the sum of $10,000 for a covenant not to compete.

Payment was made as follows: $33,000 in cash comprising $26,000 advanced by husband's parents and $7,000 from the parties' joint savings account; and the balance of $92,000 was financed.

Mr. Zenker offered two formulae for determining the value of the practice. One formula that might be utilized would be to

---

4. Wife argues that the legal scholars have classified *E.E.C.* as "a bad decision. The Delaware court's reliance on its sister state's *Stern* decision [331 A.2d 257 (1975)] is misplaced." *Equitable Distribution Reporter*, May, 1983, at page 127. Wife argues further that the editors of *Fair Share*, Volume 3, No. 5, June, 1983, pp. 13 and 14, comment upon inconsistency in that the Delaware Supreme Court cites *Stern v. Stern*, N.J.Supr., 66 N.J. 340, 331 A.2d 257 (1975) to support its position when in fact *Stern*, is the lynchpin for the result reached by the New Jersey Supreme Court in *Dugan v. Dugan*, N.J.Supr., 92 N.J. 423, 457 A.2d 1 (1983).

5. Although the parties were divorced on July 1, 1982, they have agreed that the date for valuing the practice is January 31, 1983, thus affording wife the benefit of additional reduction made after July 1, 1982. For guidance in selecting a valuation date see *Walter W.B. v. Elizabeth P.B.*, Del.Supr., 462 A.2d 414 (1983).

equate value with one-half of gross fees. Another approach would be to equate value with net profit, plus pension, plus salary. A third approach would be to determine value by weighing the type of practice, surrounding competition, and other factors. Under the third approach attention would be given to the type of practice involved (specialist or general dentistry), surrounding competition, terms of any contract, time each dentist invests in his practice and so on.

Using the first approach, one-half of husband's gross fees on January 31, 1983 would be $147,500, which Mr. Zenker thinks is too high an evaluation for the practice.

Under the second approach, the net profit ($67,636) plus salary ($100,000) plus pension ($18,499) equals $186,135 less $46,000 still owing or $140,135. Mr. Zenker thinks that this evaluation is also too high.

Mr. Zenker believes that the practice should be valued at $125,000 including good will. In essence this is the sum that was paid for the practice by husband. The hard assets he valued at $26,966. He did say that if he were acting for husband he would probably begin negotiations with an asking price for the practice of $147,000. But, again, he thinks that fair value is $125,000 (less the remaining debt of $46,000) or $79,-000.

Two other comments are in order.

If husband had gone into practice for himself there would not have been any factor for good will for quite some time. Good will cannot be created except by reputation earned and patients acquired through practice who return time and again for treatment. Here there was a sale and purchase of a practice. The good will, however, was created by Dr. Kates and transferred to husband as part of the purchase and sale. Whether the practice retains that good will is dependent upon husband's efforts and success at preserving and developing the practice.

Mr. Bumpers also proposed two formulae.

Under Mr. Bumpers' approach number 2 (RX–1), book value is determined to be $67,-636, plus *estimated* accounts receivable of $30,000, equalling $97,636. Subtracting the value of net intangible assets, $23,049, plus the good will of $17,890 produces a figure of $40,939. Subtracting $40,939 from $97,-636 produces a figure of $56,697. The original investment ($125,000) plus 10% appreciation for the first year ($12,500) plus 10% appreciation for the second year ($13,750) plus 5% appreciation for 6 months ($7,562) produces $158,812 as a result. Adding to this sum $56,697 produces a value for the practice of $215,509.

There is an approach number 4 by Mr. Bumpers (RX–2). Begin with the purchase price of $125,000. To this figure add retained earnings ($37,723) plus estimated accounts receivable ($30,000) plus the total depreciation and amortization of $51,908 (fixed assets ($34,417) and intangible assets ($17,491)). Adding these three figures results in a figure of $119,631 as adjusted retained earnings. Taking the original purchase price ($125,000) plus retained earnings adjusted ($119,631), equals $244,631 as the value of the practice.

Mr. Bumpers prefers approach number 1, yielding a value of $215,509. It will be seen that Mr. Bumpers' estimations of value are much higher than those made by Mr. Zenker. In testing Mr. Bumpers' valuations it must be borne in mind that he has never been involved in the sale or liquidation of a dental practice and came up with these formulae especially for our hearing. Mr. Bumpers testified that there are several possible approaches to valuation, none of which involves capitalization of earnings. In his opinion, the value of this dental practice should range from $180,000 to $200,000.

Tax considerations should not get in the way of the valuation process. It is perfectly legitimate for an accountant and/or lawyer to structure a purchase and sale agreement to create the best tax posture. *See, Noble v. Noble,* Del.Fam., No. C–6744, Arsht J. (April 13, 1983). As a consequence of this purchase and sale husband's assets received "stepped up" value from $26,966 to $65,494. Dr. Kates' professional corporate

stock was redeemed by husband's professional corporation and the assets and liabilities therein restated. Current assets were "stepped up" from $18,000 to about $25,000 since the tangible assets were worth $71,947 and the intangible assets worth $58,430.

I have carefully considered the evidence of value contended for by the two accountants. Frankly, it is my conclusion that Mr. Bumpers' valuations are much too high. Even the valuations made by Mr. Zenker are on the high side. Wife argues that since husband has had a meteoric rise in income to over $100,000 from $67,000 in two and one-half years, that this indicates that the practice has a value in excess of $200,000. I do not agree. Dr. Kates, who earned more than $100,000 on the average, chose to sell the practice for $115,000. Mr. Zenker has a strong feeling that the practice is worth no more than $125,000 and that the value should not be artificially inflated due to increased income. Mr. Zenker felt that the practice really was worth no more today than the sum husband paid for it. After evaluating the evidence, I agree.

I will value the net practice for purposes of this division and allocation at $79,000 and place that value in husband's column.

(4) *Pension and Profit Sharing Plan*

Wife values the pension and profit sharing plan at $35,248 and assigns that value to husband. Husband values the pension and profit sharing plan at $25,477 and allocates it to himself.

Mr. Zenker is the only witness who testified knowledgeably as to the value of the pension and profit sharing plan. He estimated the value to be $25,477. I accept this valuation and assign the pension and profit sharing plan to husband.[6]

(5) *Life Insurance*

Any policy of life insurance owned by a party belongs solely and exclusively to that party without any obligation as to beneficiary designation.

## V. DEBTS

(1) *$26,000 Advance*

■ There is considerable controversy over a $26,000 advance made by husband's parents to him at the time he purchased his dental practice. There is no legal document evidencing the loan.

A witness, Ms. Bickford, testified that husband told her that his parents *loaned* him the $26,000 but he didn't have to repay it since he was the only child of the marriage.

There was also testimony that the $26,000 was a loan to be repaid only if husband's parents needed the money.

Husband's father testified that he retired six years ago and now needs the money to live on. He also testified that he needs the money to buy another home in the same housing development (4620 Bailey Drive). He stated that the purchase price for the other house was $55,000 but that he would not sign a purchase contract if he did not get back the $26,000. He did admit that the divorce has greatly influenced his judgment in asking for repayment of the $26,000. No gift tax returns were ever filed.

Husband considers the advance a loan and not a gift. He testified that his father never asked for a repayment until after the divorce action was filed. He also testified that his father wanted the money "out of the marriage" so that wife would not share it. Frankly, husband never expected his parents to call for repayment.

Wife was very clear that the $26,000 was a gift by husband's parents to enable him to purchase the practice. According to her understanding husband did not have to repay the money because he was an only child and would ultimately be parents' testamentary beneficiary.

It is significant in assessing the testimony of the parties to realize that husband's parents have made him many gifts over the

---

**6.** I am aware that the parties have attached documents to their memoranda which were not in evidence. I have disregarded all such documents.

years. They paid most if not all of his educational expenses, gave him a $4,900 car, two television sets, a stereo, a riding lawn mower and a $100 a week allowance while he was attending dental school. These contributions serve to demonstrate a donative intent.

After carefully reviewing the evidence I have determined that the $26,000 advance made by husband's parents to husband was a gift to him to enable him to purchase his dental practice. It is not a marital debt.

(2) *Delaware Trust Debt*

Husband still owes $5,787.68 for a USAF loan granted by Delaware Trust Company in connection with his education. I deem this loan, which was cosigned by wife, to be a marital debt. Each party will be charged with payment of 50% of that debt.

## VI. COUNSEL FEES

Wife has requested an allowance of counsel fees. I certainly have authority under the statute and rule to make an allowance of counsel fees after considering the relative financial circumstances of the parties. 13 *Del.C.* § 1513, and *Fam.Ct.R.* 430(d). However, the usual affidavit has not been filed by wife's attorney attesting to the time spent in these proceedings, hourly rate and fee and disbursements requested.

In all events I have decided that each party should pay his and her own counsel fees. Wife will receive a cash payment of $19,587 to equalize the distribution of marital assets and debts between the parties. She also has other substantial cash resources on which she may draw to pay counsel fees. Husband will also be obliged to pay his own counsel fees.

Accordingly, it is my ruling that each party shall pay his and her own counsel fees.

## VII. ORDER

1. Husband shall execute and deliver to wife his quitclaim deed for the real estate at 12 Welwyn Road and wife shall assume and be responsible for the bond and mortgage obligation binding the property.

2. All personal property in the column headed "H" on "Exhibit A" attached hereto is the sole and exclusive property of husband.

3. All real and personal property under the heading "W" on "Exhibit A" attached hereto is the sole and exclusive property of wife.

4. Within 60 days from the date hereof, with interest at 10% per annum from this date, husband shall pay to wife the sum of $19,587.

5. The Delaware Trust Company Loan is now the sole and exclusive obligation of husband.

6. The $26,000 advance made by husband's parents to husband was a gift to husband and is not a marital debt.

7. Husband's obligation to wife for payment of alimony is as follows:

(a) Husband shall pay $1,500 to wife as alimony so long as both parties live, until wife's remarriage, cohabitation, settlement following a sale of the property or June 1, 1984, whichever event shall first occur;

(b) Husband has no obligation to wife for reimbursement alimony.

8. Each party owns solely and exclusively all policies of life insurance on his or her life.

9. Each party shall pay his or her own counsel fees.

10. Each party shall indemnify and save the other harmless of any debt or obligation assigned solely or exclusively by this order to the other party.

SO ORDERED.

Exhibit A

| Asset | Title | Value | H | W |
|---|---|---|---|---|
| 12 Welwyn Road | J | $ 28,200 | | $28,200 |
| Household Furniture in Kind | J | 8,040 | | 8,040 |
| Delaware Cash Reserve | J | 15,837 | | 15,837 |
| Wilmington Trust-Personal | H | 1,919 | $ 1,919 | |
| Dental Practice | H | $ 79,000 | 79,000 | |
| Gold Ingots | H | 4,095 | | 4,095 |
| Hercules Thrift | W | 2,749 | | 2,749 |
| Delaware Trust-Wife | W | 1,800 | | 1,800 |
| 1979 Honda | J | 4,550 | | 4,550 |
| Hercules, 29.635 Shares | W | 1,126 | | 1,126 |
| Tax Refund | J | 1,500 | | 1,500 |
| Pension & Profit Sharing | H | 25,477 | 25,477 | |
| Lawn Tractor | J | 600 | | 600 |
| Washer/Dryer | J | 150 | | 150 |
| Freezer | J | 75 | | 75 |
| IRA-Delaware Trust | H | 1,500 | 1,500 | |
| | | $176,618 | $107,896 | $68,722 |
| USAF Loan D.T.C. | | 5,788 | 2,894 | 2,894 |
| | | $170,830 | $105,002 | $65,828 |
| Cash Adjustment to Equalize Distribution | | | −19,587 | +19,587 |
| Total | | | $ 85,415 | $85,415 |