Nancy J. CAUGHRON, Plaintiff
and Appellant,

v.

James A. CAUGHRON, Defendant
and Appellee.

No. 15557.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 1987.

Decided Feb. 3, 1988.

Lee R. Burd, Sioux Falls, for plaintiff and appellant.

Daniel J. Nichols of Craig & Nichols, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

Appellant Nancy J. Caughron (Nancy) appeals from the circuit court's Judgment and Decree of Divorce filed September 30, 1986. Appellee is James A. Caughron (Jim). Essentially, the appeal stems from a claim of abuse of discretion because of a failure to divide marital assets (as several assets were not included) and failure to award alimony to Nancy. We reverse.

FACTS

Nancy and Jim were married on September 15, 1957, and subsequently had three children, none of whom were minors at the time of divorce. Nancy is forty-four years old and in good health. She has a high school diploma. Nancy was a homemaker until 1970, when she began working outside the home. At the time of trial, she had been employed full time in a drapery shop for six years and was earning $4.15 per hour. Nancy's gross income was between $350 and $370 every two weeks.

Jim is forty-six years old and in relatively good health. Jim experiences some discomfort as a result of an accident in 1984. However, the discomfort does not hinder his ability to work full time. He is employed full time as a truck driver. At the time of trial, Jim had been employed by the same freight company for fifteen years.

His gross income averaged slightly more than $3,000 per month.

On July 27, 1985, Nancy moved out of the parties' home and commenced divorce proceedings. Trial was held on November 15, 1985. By direction of the circuit court and by agreement of the parties, additional evidence and argument was presented by letter briefs and affidavits.

The circuit court ruled that Nancy and Jim were guilty of extreme cruelty toward each other and granted each a decree of divorce from the other. According to the findings of fact, Nancy had a cold and unloving attitude toward Jim, and Jim occasionally exhibited a violent temper toward Nancy. On two separate occasions, Jim allegedly assaulted Nancy. Neither party was awarded alimony, and Jim was ordered to pay $500 toward Nancy's attorney fees. Equity in the parties' real property was divided equally. Personal property of the parties was divided according to the terms of two documents: (1) Defendant's proposed Stipulation and Agreement, and (2) Defendant's counsel's December 10, 1985 letter with attached Defendant's Revised Property and Debt Exhibit.

## DECISION

### I.

Nancy contends that the circuit court abused its discretion by omitting certain property from the division of marital property. She maintains that three items were not included in the division: (1) cash value of Jim's life insurance policy, $750; (2) savings account balance, $400 ($1,200 balance, less $800 reserve account that the bank holds as collateral); and (3) Jim's retirement account, value unknown.

It is well settled in South Dakota law that the trial judge has "broad discretion with respect to property division, and its judgment will not be set aside unless it clearly appears that the trial court abused its discretion." *Cole v. Cole*, 384 N.W.2d 312, 314 (S.D.1986). The basic factors to be considered in a divorce property division are

the length of the marriage; the value of the property; the age and health of the parties; their respective competency to earn a living; the contributions of each party to the accumulation of the property; and the income producing capacity of the parties' assets.

*Id.* at 314. In divorce cases, the trial court is required to place a value upon all of the property held by the parties and to make an equitable distribution of that property. *Guindon v. Guindon*, 256 N.W.2d 894, 897 (S.D.1977). Finally, it should be noted that "[f]ailure to place a value upon the property of the parties for purposes of equitable distribution is reversible error." *Johnson v. Johnson*, 300 N.W.2d 865, 868 (S.D. 1980). With these basic principles of divorce law in mind, we proceed to the case at hand.

■ *Cash Value of Life Insurance and Savings Account.* It is clear from the record that the life insurance policy and the savings account were not included by the circuit court in the property division. In fact, Jim openly admits in his brief to this Court that these two items were excluded from the property division. The omission of these property items is probably a result of the piecemeal fashion of the parties' property settlement proposals. Nevertheless, the circuit court failed to include and value the life insurance policy and the savings account in the property division.

*Jim's Retirement Account.* We learn from the testimony that Jim has been employed by the same freight company for fifteen years. He is also a member of the Teamsters Union and has a retirement account with the union. Jim testified that his retirement account is not vested because he has been contributing to the account for only seven of the required ten years. A computer printout also describes Jim's account as not being vested. The circuit court did not include Jim's retirement account in the property division.

Recent South Dakota cases have held that vested retirement accounts should be included as marital assets and divided between the parties. *Arens v. Arens*, 400 N.W.2d 900, 901 (S.D.1987). Another case

held that it was not an abuse of discretion for the trial judge to find that a husband's noncontributory retirement account was vested, even though he had worked for only nine of the required ten years. *Stemper v. Stemper,* 403 N.W.2d 405 (S.D.1987). This case was reheard on a petition for rehearing, *see* 403 N.W.2d 405. Of more recent note, this case was modified by *Stemper v. Stemper,* 415 N.W.2d 159 (S.D. 1987).

It appears from the record that Jim's retirement plan was not vested. He testified that it was not vested and the computer printout seems to support his testimony. Jim contends that since his account is not vested, he has no present value in the account. However, it must be remembered that Jim personally contributed to the retirement account. Funds from Jim's paychecks were placed into the account. Again, a retirement plan has been recognized as a divisible marital asset because it represents consideration in lieu of a higher present salary. *Stemper,* 403 N.W.2d at 408 (citing *Stubbe v. Stubbe,* 376 N.W.2d 807 (S.D.1985), and *Hansen v. Hansen,* 273 N.W.2d 749 (S.D.1979)). "Contributions made to the pension plan would have been available to the family as disposable income during the marriage." *Id.* at 408 (citing *Boyd v. Boyd,* 116 Mich.App. 774, 323 N.W. 2d 553 (1982)).

■ It is not clear from the record what right Jim has toward his retirement contributions or what present value his account had at the time of trial. It is clear that the circuit court did not include Jim's retirement contributions in the property division. Since Jim's personal funds were supplied to the account, a good argument is made that Jim did indeed have some present value in the retirement funds. If Jim died or walked away from his job and the union, it is difficult to imagine that Jim would have no right to a return of his own money, even if the account was not vested. It appears that the circuit court may have committed reversible error by failing to include the value of the retirement account in the property division. However, since we do not know exactly what right Jim has to his

retirement contributions or what the present value of his account is, we remand on this issue so the circuit court, as trier of fact, can make a proper inquiry. It should be established exactly what interest Jim had in his retirement account at the time of trial, if any.

## II.

Nancy also contends that the circuit court abused its discretion by refusing to award her alimony. We agree that Nancy is entitled to some alimony and remand to the circuit court on this issue.

It is clear "that a trial court's alimony award will not be disturbed 'unless it clearly appears that the trial court abused its discretion.'" *Tesch v. Tesch,* 399 N.W.2d 880, 884 (S.D.1987) (quoting *Straub v. Straub,* 381 N.W.2d 260, 261 (S.D.1986)). Abuse of discretion is a very high standard that cannot be easily overturned. Abuse of discretion is defined as "'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Herndon v. Herndon,* 305 N.W.2d 917, 918 (S.D.1981) (citation omitted). *Tesch,* 399 N.W.2d at 884, sets forth the frequently quoted factors the trial court should consider when setting an alimony award. They are

> "the length of the marriage; the respective earning capacity of the parties; their respective financial condition after the property division; their respective age, health, and physical condition; their station in life or social standing; and, the relative fault in the termination of the marriage."

*Id.* at 884 (citation omitted). *See also Straub v. Straub,* 381 N.W.2d 260 (S.D. 1986); *Morrison v. Morrison,* 323 N.W.2d 877 (S.D.1982); and *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977).

■ At the time of trial, the parties had been married twenty-eight years. Jim was earning approximately $3,000 a month in gross pay, while Nancy was earning about $700 gross income. She has limited earning ability. This is a strong factor in an award of alimony for Nancy. Equity in the marital home was divided evenly. The val-

ue of the personal property was split about in half, but Jim was assigned all of the debt from the marriage. Jim and Nancy are in their mid-forties, and both enjoy health that does not prevent them from working full time. Social standing of the parties is not clear from the record. As far as the relative fault of the parties, Jim and Nancy were both guilty of conduct that amounted to extreme cruelty. Nancy possessed a cold, unloving, and distant attitude toward Jim. Jim was a very possessive and domineering husband with an occasionally violent temper. In reversing the lower court's denial of alimony award, we note that Nancy was a homemaker and a mother for the first thirteen years of her marriage and did not return to the labor force until the youngest child attained the age of nine during 1970. Nancy first took employment in a flower shop and began to work as a seamstress making custom drapes in 1972. She has been working full time in a drapery shop earning approximately $4.15 per hour. For six years prior to trial, she worked at this drapery shop. With her high school education, and her history as a seamstress, with no other apparent skills, her earning abilities would appear to be set in her present employment. We are mindful of our holding in *Guindon,* 256 N.W.2d at 898, wherein we stated: "Alimony will not be awarded in such an amount as would allow a wife capable of work to sit in idleness, nor will it be denied merely because she may be able to obtain employment and support herself."

An examination of these factors leads to a conclusion that the circuit court abused its discretion in refusing to grant alimony to Nancy. The court's discretion was exercised against reason and evidence.

Nancy has filed a separate motion for attorney fees and costs in bringing this appeal. Her motion is accompanied by a verified, itemized statement of legal services rendered and costs incurred, as mandated by *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). The factors used to determine whether one party should be required to pay attorney fees for the other party in a divorce appeal include "the property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case." *Storm v. Storm,* 400 N.W.2d 457, 458 (S.D. 1987). We are presented with a statement of $2,181.48, but deem the amount excessive in light of the property, short briefing, no legal novelty to questions, and no trip to the state capitol to argue this case. An award of $1,500.00 is made unto Nancy to defray her appellate attorney fees herein.

All the Justices concur.