Donna Lea ABRAMS, Plaintiff
and Appellee,

v.

Larry Lee ABRAMS, Defendant
and Appellant.

No. 18431.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1994.

Decided May 25, 1994.

Rehearing Denied June 27, 1994.

John J. Delaney, Johnson Huffman, P.C., Rapid City, for plaintiff and appellee.

Ramon A. Roubideaux, Rapid City, for defendant and appellant.

WUEST, Justice.

Larry Lee Abrams (Larry) appeals the property settlement and certain child support and visitation provisions of the decree of divorce from Donna Lea Abrams (Donna). We affirm.

## FACTS

Larry and Donna were married on January 24, 1970. Two children were born to the marriage: Larry Don, born in 1976; and Amber Dawn, born in 1981. A decree of divorce was granted on June 7, 1993 on stipulated grounds of irreconcilable differences. At the time of the divorce decree, Larry was age 50 and Donna was age 44. Additional facts are noted where applicable.

## ANALYSIS OF ISSUES AND DECISION

1. *Visitation Provisions*

■ Larry and Donna stipulated that the trial court could consider the home study evaluation on file with the court. The home study report recommended that custody of each child be vested in the parent with whom each child resided at the time of the study. Pursuant to that recommendation, custody of Larry Don (age 17) was granted to Larry, and custody of Amber Dawn (age 12) was granted to Donna. The visitation recommendations set forth in the study were "likewise adopted" by the court and incorporated into the decree. The home study recommended structured visits between the siblings, to be arranged by the parents at least twice a month. No structured visits were recommended for Larry Don with his mother Donna. For Amber Dawn, the home study recommended structured visits with her father Larry, initially "at least weekly for several

hours," and later to include overnights or full weekends. Because the parents desired flexibility in the arrangement, no certain schedule was recommended in the home study. Thus, the decree did not set out a structured visitation schedule.

Larry urges that the court abused its discretion when it failed to set out structured visitation with Amber Dawn in the decree of divorce. We have stated that a "clear abuse of discretion standard" governs our review of lower court orders regarding visitation. *Johnson v. Johnson*, 471 N.W.2d 156, 159 (S.D.1991) (citing *Fox v. Fox*, 467 N.W.2d 762, 766 (S.D.1991); *Shoop v. Shoop*, 460 N.W.2d 721, 725–26 (S.D.1990)). As stated, the court incorporated the home study recommendation by reference, and that home study stated that Amber Dawn is to visit with her father "at his residence or in a public place, at least weekly for several hours. As soon as Amber feels more comfortable with her dad, occasional overnights or full weekends can be arranged." It was because both parents wanted a flexible arrangement that no certain schedule was recommended; thus, the parents must cooperate in arranging this visitation between Amber and her father Larry. The decision of the lower court to not set out a structured visitation schedule was "within the bounds of the trial court's discretion." *Johnson*, 471 N.W.2d at 164. We affirm the trial court on this issue.[1]

2. *Child Support*

■ The divorce action was commenced in April 1992. On August 28, 1992, the court ordered Larry to pay interim child support of $608.00 per month, based on the understanding that both children would be living with Donna. However, Larry Don moved in with Larry in September 1992. In January 1993, the parties readjusted the child support by agreement, to account for the fact that one

---

1. We note that, "Visitation rights can be modified without showing a material change of circumstances of the parties when custodial rights would not thereby be prejudiced." *Rivers v. Rivers*, 322 N.W.2d 864, 865 (S.D.1982) (citing *Blare v. Blare*, 302 N.W.2d 787, 793 (S.D.1981)). See *Hershey v. Hershey*, 85 S.D. 85, 91–92, 177 N.W.2d 267, 271 (1970); *Andera v. Andera*, 277 N.W.2d 725, 728 (S.D.1979). If the visitation arrangements as set out by the trial court cause "hardship, the trial court could give relief upon request ... if the circumstances warrant a clarification of the decree." *Andera*, 277 N.W.2d at 728.

child was living with each parent. Larry asked the court to address his "overpayment" of child support from September 1992 until January 1993, and asked that he be given credit for overpayments. In its memorandum opinion which was incorporated into the into the findings of fact and conclusions of law, the court took this into consideration, noting that *Larry paid no child support* from April until September 1992. Thus, the court decided not to make any further adjustments on the child support payments. This determination was within the discretion of the trial court, and we will not disturb its decision. *Barrett v. Barrett*, 308 N.W.2d 884, 885 (S.D. 1981).

3. *Property Valuation and Division*

Donna worked outside the home on a full time basis for the entirety of the marriage, taking two six-week maternity leaves on accumulated sick leave so there was no loss of income. Larry retired from the highway patrol in 1988, and then worked seasonally for the highway patrol and Mount Rushmore. The court determined that the contributions to the marital estate were substantially equal, and the record reveals that the property division was also substantially equal.

■ Larry disputes the valuation of the marital home, which was awarded to Donna, subject to the indebtedness of a first and second mortgage. The parties had lived in Rapid City until they moved into the house in Black Hawk, South Dakota, in May 1989. At the time of trial, Donna presented an appraisal showing the market value of the home at $68,000, and further presented an estimated statement showing all costs that would be incurred upon sale of the house, including brokerage commission, real estate taxes, and other fees. Thus, the net value of the home for purposes of the property division was $19,417. Larry disputes the valuation, specifically arguing that the closing costs were inflated, and that they should not be included

in the valuation. According to Larry's brief, the house was not being sold; thus, he characterizes the closing costs as "imaginary."

First, we note that Larry failed to present any evidence at trial to dispute the appraisal and valuation of the house. Second, the record indicates that there were, during the pendency of the divorce in the lower court, plans to sell the house. The record includes an August 1992 affidavit from Larry, wherein he twice states that he was helping Donna to "fix up the home" for possible sale. We also note that Larry, in his refusal to execute a quitclaim deed to Donna following the decree of divorce, argues that, "She would sell [the house] tomorrow given the chance."[2] There was sufficient evidence on the record to support a conclusion that the sale of the house was clearly contemplated by the parties.

Other courts have directly addressed the issue of whether the costs of selling a marital home may properly be included in valuation of the house for purposes of making an equitable division of the property. As one court stated:

> [E]ven if neither party contemplated selling the home, the costs of sale must still be deducted. Valuation is nothing more than a function of what the home is worth if it were to be presently sold; therefore, the costs of achieving that value should be considered. Moreover, any number of events could occur that would require the home to be sold at virtually any time. Thus, [the court] did not err by including costs of sale in the net equity of the marital home.

*Zeigler v. Zeigler*, 365 Pa.Super. 545, 530 A.2d 445, 447 (1987) (citations omitted). Likewise, another court has stated that, "Where a trial court, acting within its discretion, determines that an equitable division of property can best be achieved by considering the net equity rather than the gross equity of the property, this court will not interfere

---

**2.** This court denied Larry's motion for stay of execution of the decree of divorce, pending this appeal. In the lower court, at the hearing on this motion, counsel for Donna stated that Donna planned to sell the house and had "potential buyers," but could not proceed until she received a quitclaim deed from Larry. The record also shows that Donna would be "happy" to sell the house to Larry at the appraised value. Apparently, as this appeal was pending, and in spite of our order denying the stay of execution, Larry continues to refuse to execute the quitclaim deed to Donna.

with that determination." *In re* Marriage of Woodrum, 618 P.2d 732, 734 (Colo.App.1980). Still another court found abuse of discretion in the lower court's refusal to take into account the costs of selling a home, including "payment of a sales commission, payment of pro-rated taxes and other incidental expenses in connection with the sale," when valuating a home for purposes of property division in a divorce. *Payne v. Payne,* 5 Va.App. 359, 363 S.E.2d 428, 433 (1987). *See also Wright v. Wright,* 469 A.2d 803, 806 (Del.Fam.Ct.1983) (noting that the parties properly agreed to reduce the fair market value appraisal of the house by eight percent, "to cover selling costs").

Thus, even if sale of the home were not immediately contemplated, it was reasonable for the trial court to consider the net value of the house to the party who received it. Additionally, Larry presents no contrary evidence regarding the amount of the closing costs. "We will not overturn a valuation unless it is clearly erroneous." *Johnson,* 471 N.W.2d at 162 (citing *Herrboldt v. Herrboldt,* 303 N.W.2d 571, 572 (S.D.1981)). We find no error in the circuit court's valuation of the marital home.

Larry additionally argues that if Donna intended to sell the home, the court should have awarded it to Larry as part of his property award. Larry urges that he and his son "could have made use of it and salvaged the marital home for them and their descendants." First, we note that the parties had lived in the house for less than three years at the time of the filing of the divorce. This was not ancestral property for which there need be serious concern in regard to keeping it in the family. Second, Donna has indicated her willingness to sell it to Larry at the appraised value—which could likely be accomplished by his tendering Donna's share of the net equity as calculated by the court. Finally, in Larry's August 1992 affidavit, he states that he was involved in cleaning up the home for possible sale; thus, Larry knew during the pendency of the divorce that sale of the home was contemplated by the parties.

■ Finally, Larry disputes the trial court's calculations regarding the parties' pensions as marital property. This court has repeatedly held that retirement plans accrued during the marriage, whether contributory or non-contributory, are divisible marital assets. *Bell v. Bell,* 499 N.W.2d 145, 147 (S.D.1993) (citing *Kanta v. Kanta,* 479 N.W.2d 505, 510 (S.D.1991); *Stemper v. Stemper,* 403 N.W.2d 405, 408 (S.D.1987); *Stubbe v. Stubbe,* 376 N.W.2d 807, 809 (S.D. 1985)). In this instance, the marital estate included three pension plans: (1) Larry presently receives a pension due to his retirement from the highway patrol; (2) Larry may receive a pension in the future from the National Guard; and (3) Donna may receive a federal employee pension (FERS) in the future. Larry does not appear to challenge the court's calculations regarding his pensions,[3] but urges that the trial court abused its discretion in failing to valuate Donna's possible future pension in terms of present value. We note that Larry presented no evidence at trial in this regard, but only presented a post-trial memorandum on the subject. In its findings of fact, the court noted that Donna's Federal Employee Retirement System (FERS) service included six years of service during the marriage. Larry would be entitled to one-half of any FERS pension attributable to the service credited during the marriage, if and when Donna becomes eligible to receive such a pension. Thus, for example, if Donna retires after eighteen years of service, Larry would be entitled to one-half of ⁶/₁₈ths of Donna's pension. Since Donna could leave federal employment and withdraw contributions to the FERS program at the time, the trial court

3. First, as to the highway patrol pension, Donna presented expert testimony regarding the present value of this pension, which was $154,001.00. Larry's entitlement to that pension was earned entirely within the marriage. The trial court found that, "Equalizing the property division with the present value of [Larry's] Highway Patrol pension requires [Donna] to receive 46.67% of the pension or $71,872.27. That division can be satisfied by granting [Donna] a monthly entitlement to 46.67% of the pension benefit" or a monthly payment of $478.83. Second, the court found that Larry's National Guard service includes thirteen years of service during the marriage. Donna will be entitled to one-half of the pension attributable to the service credited during the marriage, or 32.5% of the pension.

provided that Larry should receive the appropriate share of any withdrawal if that takes place in lieu of a pension.

The calculations of the trial court appear correct and reasonable. *Radigan v. Radigan,* 465 N.W.2d 483, 486 (S.D.1991) (citing *Hautala v. Hautala,* 417 N.W.2d 879, 880 n. 1 (S.D.1988)). "This court may not set aside the trial court's property division unless we find a clear abuse of discretion." *Radigan,* 465 N.W.2d at 487 (citing *Henrichs v. Henrichs,* 426 N.W.2d 569, 572 (S.D.1988)). We find no abuse of discretion in the trial court's present and prospective divisions of either Larry's or Donna's pensions. *Radigan,* 465 N.W.2d at 487.

■ In regard to the overall property settlement, we reiterate that, "We have consistently held that trial courts have broad discretion in making division of property and that the same will not be set aside unless a clear abuse of discretion appears." *Fait v. Fait,* 345 N.W.2d 872, 872 (S.D.1984) (citations omitted). In his dissent, wherein Justice Henderson discusses the division of property, he notes that, "He [Larry] did not want a divorce. His wife [Donna] wanted a divorce." Identification of the party who "wanted" the divorce is irrelevant to the property settlement. Apparently, Justice Henderson "would have us consider the relative fault of the parties. Although fault is a factor in awards of alimony ... *it is not applicable here.*" *Id.* at 873 (emphasis added) (citations omitted). *See Cole v. Cole,* 384 N.W.2d 312, 314 (S.D.1986) ("Generally, fault will not be taken into account with regard to an award of property."); *Hanks v. Hanks,* 296 N.W.2d 523, 527 (S.D.1980) (noting that "relative fault of the parties has generally been removed as consideration with respect to property division"); *Price v. Price,* 278 N.W.2d 455, 458 (S.D.1979) ("We will not discuss the faults and circumstances leading up to the divorce as a factor to be considered in the analysis of the property division, because fault was not relevant to the acquisition of the marital property."); *Adam v. Adam,* 254 N.W.2d 123, 130 (S.D.1977) (noting that SDCL 25–4–45.1 removes fault from consideration in property awards). Even if fault were a factor in property divisions,

which it is not, we note that Donna and Larry "stipulated that a divorce could be granted to both parties on the grounds of irreconcilable differences. Thus, in adopting the stipulation, the trial court made no finding of fault." *Parsons v. Parsons,* 469 N.W.2d 581, 582 (S.D.1991). The trial court in this case had no duty to make findings of fact on fault, which was an immaterial and undisputed issue; and it would be equally improper for this court to attempt the same.

### 4. *Appellate Attorney's Fees*

Donna filed a separate motion for appellate attorney fees accompanied by an itemized statement of expenses. *Radigan,* 465 N.W.2d at 487 (citing *Malcolm v. Malcolm,* 365 N.W.2d 863, 866 (S.D.1985)). "The factors used to determine whether one party should be required to pay attorney fees for the other party in a divorce appeal include 'the property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case.'" *Caughron v. Caughron,* 418 N.W.2d 791, 794 (S.D.1988) (citing *Storm v. Storm,* 400 N.W.2d 457, 458 (S.D.1987)). We are presented with a statement of $1,471.70 but "deem the amount excessive in light of the property, short briefing, no legal novelty to questions, and no trip to the state capitol to argue this case." *Caughron,* 418 N.W.2d at 794. An award of $750.00 is made to Donna to defray her appellate attorney fees herein.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

### I. IMAGINARY CLOSING COSTS AWARD

In determining property values, Donna Abrams presented an appraisal showing the market value of the home to be $68,000. Larry Abrams should have realized that the home would be considered in determining the divorce settlement. He failed to provide contrary evidence to this amount.

However, the trial court went one step further by adding closing costs into the mix. Although the Abrams may have contemplated selling the house, such sale did not occur. Generally, something is a contingent liability when it depends upon some future event, which may or may not happen thereby making it uncertain whether it will ever become a liability. *Hansen v. Hansen*, 302 N.W.2d 801, 803 (S.D.1981).

Closing costs are contingent upon the sale of the house, an event which was purely speculative at the time of trial. "Speculative contingent liabilities should not be considered in apportioning the parties' assets for purposes of a property division." *Hansen*, 302 N.W.2d at 802 (quoting *Wallahan v. Wallahan*, 284 N.W.2d 21, 26 (S.D.1979)). Donna received the $68,000 home plus $10,183 in alleged closing costs. Forget the fact that the closing costs here are 15% of the value of the home. She has been awarded $10,183, yet never will have to sell the home to justify the receipt of these costs. Essentially, this is an award of an imaginary dollar amount. Such an imaginary award is an abuse of discretion. *Hanks v. Hanks*, 296 N.W.2d 523, 526 (S.D.1980). Thus, the $10,183 award should be eliminated.

## II. FATHER DENIED REASONABLE VISITATION

I likewise dissent to the failure, by the trial court, to consider the home study recommendations of Jean L. Thompson, M.A., which has, in effect, foreclosed Larry Abrams from reasonably visiting his daughter, Amber. Failing to structure any visitation to implement its Findings of Fact and Conclusions of Law concerning the custody evaluation report, this case should be reversed and remanded so as to insure Larry Abrams' rights of reasonable visitation of Amber. As it now stands, Larry may visit Amber only at the mother's whim, fancy or mercy.

During the entire pendency of these proceedings, Larry seldom saw his daughter. In an Order to Show Cause proceeding held prior to trial, testimony established this to be a fact. Further, the trial court realized there existed a problem in this regard. Recognizing the problem and then adopting Conclusion of Law # 4: "The care, custody and visitation of the children should be placed in conformance with the home study recommendations on file herein," the trial court established no structured visitation. Such a judicial result is inconsistent with the findings of the home study evaluation. And it is inconsistent with Findings of Fact # 11 and # 12. Said study recommended to the trial court the following, inter alia: (1) No limit on telephone contacts between the children and either parent; (2) The children should spend Mother's Day with the mother and Father's Day with the father; (3) "Structured visits [with Amber] are necessary"; (4) Structured visits by mother with Larry "will not work"; (5) The major holidays of Easter, Thanksgiving and Christmas should be alternated to continue the children's relationship with extended family members and develop new traditions and rituals with each parent; it is important for Larry, Don and Amber to be together on holidays; and (6) During the summer months, each parent should have up to three weeks of time with the children to allow for an out-of-town vacation. Thereby, father will have a meaningful part of Amber's life. Findings of Fact must support the Conclusions of Law and judgment. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D. 1982). This denial of reasonable visitation constitutes undeserved ill-treatment. It is an abuse of discretion. *Shoop v. Shoop*, 460 N.W.2d 721, 725–26 (S.D.1990).

## III. PROPERTY DIVISION AND ABUSE OF DISCRETION

Although the trial court has a broad discretion in dividing marital property, it is to be remembered that this broad discretion is not an uncontrolled discretion; therefore, the exercise thereof must have a sound and substantial basis in the testimony. SDCL 25–4–44. *Fink v. Fink*, 296 N.W.2d 916 (S.D. 1980). It is axiomatic that each case must be judged upon its own set of facts.

In the trial arena, litigation is fevered. We must remember that each trial court in our state works independently. They possess no self-regulating capacity to provide uniformity on decisions throughout South

Dakota. Therefore, by appellate review, trial courts' decisions are reversed in some cases because of petitions for redress filed in the appellate court by the citizenry. If this Court were to approve of each decision in the trial court, there would be no reason for our existence. We owe a duty, under the settled law of this state, and by our inherent structure, to review a division of property, in a divorce case, to breathe life into the rule that judicial discretion must have a sound and substantial basis in the testimony. In my opinion, Larry Abrams has been aggrieved by the decision below concerning property matters. He ends up losing his home, paying child support of $600 per month, and paying approximately 50% of one pension and 32.5% of another. He has served the state of South Dakota well in the South Dakota Highway Patrol and the South Dakota National Guard. He did not want a divorce. His wife wanted a divorce. To her, it is, essentially, goodbye husband, I do not want you anymore, but I desire approximately 50% of what you have worked for all of your adult life plus the home and plus $600 child support. And occasionally, if you are lucky, you will get to see your daughter.

He anguished that there was no family counseling because none was forthcoming. This fact was established by the court ordered home study evaluation. His ex-wife has excellent health and works daily. At the time of the divorce action in the spring of 1993, her current gross annual income was approximately $23,000 per year. His current gross annual income, including wages as a seasonal ranger at Mount Rushmore, retirement and the National Guard was approximately $29,600. Therefore, the income of each individual involved in this divorce has no great disparity. She is free to date and to live her own life as she sees fit *but* she wants to do it on Larry Abrams' pensions. In a sense, she wants to be independently dependent. We live in a different world and in different times. We live in a "Me Generation." Family unity and family sovereignty, central to the organization and foundation of the Christian social order, is old hat. At one time, the family was the major welfare agency caring for its old and young, relatives and friends. But that, largely, has dissipated,

too. Larry is caught up in the new order which is an abomination of family life.

Equity is for both women and men. Equity must be explicit enough and accurate enough and practicable enough so as to offer freedom from all influences which affect the truth or accuracy of its pronouncement. In my opinion, Larry Abrams has not been done equity, either by the trial court or this Court. Donna worked nearly all of her married life and does not deserve to be turned out in the cold. Had this trial court awarded her one-half or smaller portion of his major pension, the pension he receives from the South Dakota Highway Patrol, it perhaps would be somewhat understandable. However, the trial court went further and awarded her a percentage of his National Guard benefits. We know not if the husband will ever be awarded these benefits. If he dies before attaining the age of 60, no benefits will be awarded. But at this time, she is awarded 32.5% of his benefits earned during the marriage, that is to say, 6½ years out of 20— providing he has 20 years of service and attains the age of 60. The trial court could put no present value on this National Guard pension award, because the present value could not be determined. Reader, if he gets this National Guard pension, we know not, but she is awarded such a fortuity. The Highway Patrol pension is set in stone and, therefore, it can be divided today. One-half of one good pension is surely enough for her. Wife, as outlined above, has good health and is capable of earning a living.

According to a report filed in this case, it is noted that Larry has heart problems. Must he drive himself on for a second pension so that she can receive 32.5% of that pension, i.e., the National Guard pension? What happens to his incentive and his desire to live a normal life? Apparently, he is to serve, serve, serve so that she can get a percentage of a National Guard pension also. The Bible teaches us that we must earn our bread by the sweat of our brow. She wants her living, throughout life, even when she no longer desires him as a husband, from the sweat of Larry Abrams' brow. Happy days for her, she will receive $478.83, under this decision, directly from the state of South Dakota as

part of the Highway Patrol pension. Add on the fact that the $600 he pays in child support will be used, in part, for food, lights, heat, and shelter for her. Then, consider her gross annual income of $23,000 per year. In my opinion, this straps Larry Abrams and it weights the equities to a point of an abuse of discretion. Why? She receives $7,200 in child support per year and $5,745.96 by way of one-half of the Highway Patrol pension. This is a total of $12,945.96 per year. This is deducted from his net income. Thus, his security is threatened, if not destroyed.

A year after I joined this Court, in 1980, there were seven factors set forth in determining the fairness of an award on marital assets. One of those factors was the contribution of each party. *Clement v. Clement*, 292 N.W.2d 799 (S.D.1980). Larry has made, by far, the greatest financial contribution by virtue of his salary in the South Dakota Highway Patrol. While also participating in the National Guard, he took seasonal employment as a ranger at Mount Rushmore. He was a hard worker and a good producer. His life has been destroyed by her desire to be free of the marriage bonds. A pall enshrouds his retirement. His security is diminished. And yes, he has the audacity, when paying child support of $600 per month, to desire a share in the life of his daughter, Amber.

I never saw anything to suggest in Larry's pleas to the trial court or in his briefs in the Supreme Court to obtain her pension, which present value cannot be determined. If she is awarded approximately one-half of his paramount pension and some day has her own pension, has she not been awarded enough? Why does she need the National Guard pension, too? She, in the "Me Generation," wanting her freedom, desires to make no sacrifices in her economic lifestyle. She wants her economic lifestyle heightened. Alas, alack, when an apple is cut in half, there are not two apples. And although this writing might seemingly portray some harsh facts, the appellant, Larry Abrams, is entitled to justice at the Bar. There has, in my opinion, been a division of assets in an unequitable manner. Such is the question of review before us. *Stenberg v. Stenberg,* 90 S.D. 229, 240 N.W.2d 100 (1976). So many criteria has escaped the trial court and this Court in this decision: The ages of the parties, their state of health, their ability to earn a living, the income-producing capacity of each party, and the contribution of each party to the accumulation of the property. *Hanson v. Hanson,* 252 N.W.2d 907 (S.D. 1977). *Accord Lien v. Lien,* 278 N.W.2d 436 (S.D.1979).

As the majority notes in the closing paragraph of Issue 3, the relative fault of the parties is not at issue here. The record reveals the parties stipulated to a divorce on grounds of irreconcilable differences. By quoting *Fait v. Fait,* 345 N.W.2d 872, 873 (S.D.1984), the majority implies that my present dissent is based upon fault; *it is not.* I concurred in *Fait.* With Larry forfeiting nearly $13,000 of his $29,000 income to Donna, he will be left with just under $17,000 a year while Donna retains nearly $36,000. No, I speak of inequity, not fault.