Barbara J. BEERMANN, Plaintiff and Appellee,

v.

Kevin G. BEERMANN, Defendant and Appellant.

No. 18728.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1994.

Decided Jan. 4, 1995.

**128**

Elizabeth Rosenbaum, Sioux City, for plaintiff and appellee.

Shari B. Langner, Sioux Falls, for defendant and appellant.

WUEST, Justice.

Husband appeals the circuit court's judgment finding him in contempt and denying his petition to modify child custody, child support, and visitation. We affirm.

### FACTS

Kevin and Barbara Beermann were married in 1974. Three children were born of this union, all of whom are still minors. During their marriage, Kevin farmed and Barbara raised their children and assisted Kevin with the farming operation. In June 1992 the couple separated and six months later, divorced upon grounds of irreconcilable differences. The divorce decree incorporated the child custody, support, and property settlement agreement executed by the parties. Barbara was represented by legal counsel and Kevin, while unrepresented by a divorce attorney, had the agreement examined by both his accountant and his attorney for the farm. The agreement was drafted by Barbara's attorney. At the time of the agreement, Barbara had just commenced a full-time nursing degree program at Western Iowa Tech in Sioux City, Iowa and Kevin was farming and working full-time at the Soil Conservation Service in Elk Point, South Dakota.

The agreement provided Kevin would pay living expenses for Barbara and the children as well as Barbara's educational expenses while she was in school. Barbara's nursing degree was expected to be completed within two years. The parties agreed this amount exceeded support obligation payments under SDCL chapter 25-7, and that upon completion of Barbara's education, Kevin's support obligation would be reduced to the amount prescribed by statute. Rehabilitation alimony of $500 per month for the two years Barbara was in school was included in this payment.

According to the parties' agreement, Kevin would keep the farm and farming equipment acquired during the parties' marriage, which was valued at $267,500. Kevin agreed to assume the debt on the farm property, al-

though the amount was not set out in the agreement. Also according to the agreement, Kevin would pay Barbara a cash sum of $125,000 in ten annual payments to commence nine months following completion of her nursing program to settle her rights and interest in the couple's farm property. A provision within the agreement stated that in the event of crop failure or farming disaster not Kevin's fault, he could defer one annual payment to the end of the payment schedule, extending the payment period by one year. By agreement, Barbara would continue to have possession and use of the family home in Elk Point but, if sold, the proceeds would be divided equally.

Kevin complied with the agreement for nine months and then stopped payments to Barbara and the children without telling them he had done so. Barbara learned he had stopped making payments when she began receiving overdraft notices from her bank. Kevin filed a petition for modification of child custody, child support, and visitation in October, 1993. Barbara applied for a finding of contempt for Kevin's failure to abide by the agreement incorporated and approved in the final decree. Following a hearing, the circuit court concluded "[a]lthough the terms of the agreement are somewhat vague, it is basically intended as a property settlement, under which Barbara and the children are to receive support payments until the time she completes her nursing education."

### STANDARD OF REVIEW

We note first that we review this appeal under a de novo standard of review. " 'Courts encourage settlements in divorce actions. Contractual stipulations in divorce proceedings are governed by the law of contracts. The interpretation of a contract is a matter of law for a court to decide.' " *Estate of Thomas v. Sheffield*, 511 N.W.2d 841, 843 (S.D.1994) (quoting *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D.1984)).

### ANALYSIS AND CONCLUSION

I. *Whether the court erred in finding the parties' settlement agreement to be a property settlement, not subject to modification*

Kevin argues the circuit court erred in finding the support provision of the parties'

child custody, support, and property settlement agreement to be a property division, thus precluding him from a modification thereof. He claims the periodic nature of the payments in contrast to a lump sum payment, as well as the fact a provision dividing property exists elsewhere in the agreement support his position. Barbara claims the agreement was drafted in such a way to provide Kevin with a tax benefit and to alleviate the harshness of a total cash award of property considering the Beermanns' nonliquid marital assets.

It is settled law in this state that alimony and child support provisions are subject to revision when conditions change. *Peterson v. Peterson*, 434 N.W.2d 732, 735 (S.D. 1989). *See also, Matthews v. Matthews*, 71 S.D. 115, 22 N.W.2d 27 (1946). However, this rule does not apply to the parties' property division. *Peterson*, 434 N.W.2d at 735. *See Holt v. Holt*, 84 S.D. 671, 176 N.W.2d 51 (1970). Absent fraud or some other reason which would apply to any judgment, a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication and is not subject to later modification. *Jeffries v. Jeffries*, 434 N.W.2d 585, 588 (S.D.1989) (citing *Blare v. Blare*, 302 N.W.2d 787, 790 (S.D.1981)). *See also Johansen v. Johansen*, 365 N.W.2d 859, 862 (S.D.1985).

Here, Kevin claims the parties' agreement whereby he made periodic payments of living and educational expenses to Barbara and the children while Barbara was a full-time nursing student constituted support and not a division of property and, therefore, was subject to modification due to a change in the parties' circumstances. Specifically, Kevin stated those changes are: Barbara has sold the marital home and has purchased a home in Sioux City in which she currently resides with her boyfriend; Barbara's living expenses have decreased due to this move; and his own income has decreased due to crop flooding.

Kevin claimed he signed the settlement agreement hoping for a reconciliation, which

he realized, nine months later when Barbara sold the marital home and moved in with her boyfriend, was not going to happen. The circuit court found Kevin had made payments totalling approximately $20,650.00 up to this time. Both parties entered into this agreement voluntarily. We agree with the trial court they should be bound by their agreement which was approved by the court.

In *Lien v. Lien*, 420 N.W.2d 26, 29 (S.D. 1988) (*Lien II*), we held that payments, though denominated "support," were, in fact, part of a property division between the parties. "It is apparent from a reading of *Lien II* that when deciding whether an award of alimony is, in reality, a portion of a property settlement, a court must scrutinize the language of the divorce decree, the circumstances encompassing it, and the end sought to be achieved by the parties." *Peterson*, 434 N.W.2d at 735. In determining the intention of the parties in their settlement agreement, we look to the language the parties used. *Johnson v. Johnson*, 291 N.W.2d 776, 778 (S.D.1980).

Kevin and Barbara had acquired farmland and farming equipment during the course of their marriage valued at $267,500. The parties' agreement provided Kevin should have the land, farm machinery, equipment, tools, storage bins, irrigation equipment, and miscellaneous items acquired throughout the marriage which were necessary for continued full-time farming. The agreement further provided Kevin should have the parties' 1979 Ford pickup, 1980 Bonneville automobile, and 1991 Ford Mustang, with the debt thereon. Kevin and Barbara equitably divided their bank accounts and household items.

By agreement and in exchange, Barbara was to receive monthly living expenses including mortgage payments on the family home, educational expenses during the two years she was completing her nursing degree, and the parties' 1990 Chevrolet pickup. Upon completion of her degree, these living expenses and educational expenses would cease and Barbara would assume the mortgage payments on the family home. If she decided to leave Elk Point and sell the home, the proceeds were to be divided equally between Barbara and Kevin. Upon completion

of her degree program, Kevin would pay his child support obligation according to the statutory guidelines set out in SDCL Chapter 25–7. Nine months after the completion of Barbara's degree, Kevin would commence annual payments of $12,500 until a total cash sum of $125,000 was paid in full.

We agree with the circuit court's determination that this agreement was intended by the parties to be in the nature of a property settlement. The $125,000 cash lump sum payment together with the living and educational expenses paid to Barbara and the children for the two years she is in nursing school constituted an equitable exchange for the farmland and farming equipment valued at $267,500.

## II. Whether the court erred in holding Kevin in contempt

■▬▬▬ The circuit court found Kevin in contempt of court for his willful refusal to pay his support obligations in violation of the decree. Four elements are required for a contempt finding: 1) the existence of an order; 2) knowledge of the order; 3) ability to comply with the order; and 4) willful or contumacious disobedience of the order. *Thomerson v. Thomerson*, 387 N.W.2d 509, 512–13 (S.D.1986); *Rousseau v. Gesinger*, 330 N.W.2d 522, 524 (S.D.1983). Kevin claims inability to comply with the decree due to loss of income caused by crop flooding on part of his land, and therefore, no willful disobedience. Kevin bears the burden of establishing his inability to comply. *Jameson v. Jameson*, 306 N.W.2d 240, 241 (S.D. 1981). The circuit court found Kevin able to comply with the decree since he had complied with it initially. Further, the evidence showed Kevin was still employed full-time at the Soil Conservation Service, still owned the farm land and property, was still receiving Conservation Reserve Program payments from the federal government, and was renting farm land from others and producing crops on the rented land.

"The defense we have recognized in such proceedings has been the inability to comply with an order rather than simply a lack of funds." *Nauman v. Nauman*, 320 N.W.2d 519, 521 (S.D.1982) (citing *Talbert v. Talbert*,

290 N.W.2d 862, 863 (S.D.1980); *Simmons v. Simmons*, 67 S.D. 145, 149, 290 N.W. 319, 321 (1940)). "The question of [ability to comply] is not merely one of the amount of cash which the husband has on hand." *Nauman*, 320 N.W.2d at 521 (quoting 3 W. Nelson, Divorce and Annulment § 16.25, 435 (2d ed. 1961 rev. vol.)). "[U]nless a defendant shows he has complied with the court's order to the fullest extent of his ability his defense of inability fails." *Nauman*, 320 N.W.2d at 521 (quoting *Bailey v. Bailey*, 77 S.D. 546, 549, 95 N.W.2d 533, 534 (1959)). We agree with the circuit court's finding that Kevin had the ability to comply with the final decree of the court which incorporated the parties' settlement agreement. We further agree with the circuit court's finding that Kevin unilaterally stopped paying and that his action was willful.

### III. Whether the court erred in not awarding Barbara's attorney's fees

■ Barbara asserts the trial court erred in failing to award her attorney's fees and expenses in the amount of $874.00 requested during the show cause hearing. SDCL 15–17–7, read together with SDCL 15–6–53(a), permits an award of attorney's fees in child support modification proceedings. *Whalen v. Whalen*, 490 N.W.2d 276, 284 (S.D.1992). An award of attorney's fees in domestic relations cases rests with the sound discretion of the trial court. *Klein v. Klein*, 500 N.W.2d 236, 241 (S.D.1993). The trial court's decision will not be reversed absent a showing of clear abuse of that discretion. *Whalen*, 490 N.W.2d at 284. In *Whalen*, this court set out the two-step procedure trial courts must follow in exercising that discretion. *Id.*

According to both parties' briefs, the circuit court signed Barbara's proposed findings of fact and conclusions of law without change. Barbara neglected to include an award of attorney's fees in her proposed findings and conclusions and the record discloses no circuit court ruling on the award. We stated in *Estate of Billings v. Jehovah Witnesses*, 506 N.W.2d 138 (S.D.1993):

> If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. Where a ruling on a motion or objection is reserved by the

court, the moving party must subsequently obtain a direct ruling in order to preserve the matter for appellate review. *The burden of demanding a ruling rests upon the party desiring it.* 'If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.'

*Id.* at 141 (emphasis added) (quoting *American Fed. Sav. & Loan Ass'n v. Kass*, 320 N.W.2d 800, 803 (S.D.1982) and citing *Nauman v. Nauman*, 336 N.W.2d 662, 663 (S.D. 1983); *State v. Sickler*, 334 N.W.2d 677, 679 (S.D.1983)). *See also In re K.O. Lee Co.*, 489 N.W.2d 606, 611 (S.D.1992); *Cooper v. Cooper*, 299 N.W.2d 798, 800 (S.D.1980).

We hold Barbara's failure to obtain a ruling of an award of her attorney's fees at the circuit court level precludes review by this court and we hereby deem the issue waived.

### IV. Appellate Attorney's Fees

■ Both parties submitted affidavits accompanied by itemized statements setting out their attorneys' fees and costs incurred to this court. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). Barbara's attorney submitted a statement of $2,479.48. Kevin's attorney submitted a statement of $4,664.74. In deciding whether a party is entitled to appellate attorney fees, we consider the " 'property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case.' " *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994) (quoting *Caughron v. Caughron*, 418 N.W.2d 791, 794 (S.D.1988)) (citing *Storm v. Storm*, 400 N.W.2d 457, 458 (S.D. 1987)). Considering these factors in conjunction with this case, we have determined that Kevin shall be responsible for his own appellate attorney fees and that he shall pay $1500 to help defray Barbara's appellate attorney fees.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.