1999 SD 162

**Tristina A. WEEKLEY, Plaintiff and Appellant,**

v.

**Todd P. WEEKLEY, Defendant and Appellee.**

**Nos. 20844, 20864.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Dec. 29, 1999.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

David M. Dillon, Rapid City, South Dakota, Attorney for defendant and appellee.

SABERS, Justice.

[¶ 1.] Tristina Weekley made a motion to modify child support and eliminate alimony. In response, Todd Weekley filed a motion to dismiss. The trial court granted Todd's motion to dismiss the proposed modification of child support, but denied Todd's motion to dismiss the proposed modification of alimony. Tristina appealed and Todd filed a notice of review. We affirm.

## FACTS

[¶ 2.] Tristina and Todd Weekley were married April 6, 1985 in Rapid City, South Dakota. In August, they moved to California where they resided for the next nine years. They had one child, Taylor A. Weekley, who was born November 25, 1990.

[¶ 3.] On June 16, 1994, while still residing in Contra Costa County, California, the parties entered into a "Marital Settlement

Agreement." This agreement divided the community property, addressed custody and visitation, child support, alimony and attorney's fees. Pursuant to those terms, Tristina received primary physical custody of Taylor and relocated to Rapid City, South Dakota. In exchange, she obligated herself to pay: (1) $570 per month in spousal support to Todd, (2) $330 per month in child support to Todd, (3) 75% of travel costs incurred for Taylor to go to California for visitation, (4) the medical insurance premium for both Taylor and Todd, as long as he is eligible to be covered under her plan, plus 75% of all uncovered medical expenses for Taylor, and (5) 100% of her own child care expenses as well as 50% of child care expenses incurred by Todd.[1] The spousal support was to continue until the "death of either party, remarriage of husband, or further order of Court, whichever occurs first." Tristina further agreed that Todd would be reimbursed for his attorney fees from their 1994 income tax refund.

[¶ 4.] The Agreement also set forth:

H. Dissolution of Marriage Action:

In the event that either party, at any time in the future, elects to file a dissolution of marriage action, this Marital Settlement Agreement entered into herein shall be incorporated and made a part of said Judgment of Dissolution of Marriage. The terms and conditions of this Marital Settlement Agreement in all aspects shall apply to that dissolution of marriage of [sic] action, and the provisions of this Marital Settlement Agreement shall be adopted and become a part of any Judgment of Dissolution of Marriage so filed.

F. Jurisdiction.

The parties hereby agree and consent to California being the State having jurisdiction over issues regarding the minor child. The parties expressly waive the right to petition in any jurisdiction other than California regarding issues of the minor child. In the event that a party shall file a petition and/or legal action in a State other than California regarding issues of the minor child, said party hereby agrees to pay the costs incurred by the other party for attorney's fees and transportation costs in traveling to that jurisdiction to litigate any such action that has been filed. This provision does not apply to any legal action filed in California regarding the minor child.

[¶ 5.] On October 17, 1994, the parties received a Judgment of Legal Separation from the Contra Costa County, California. The terms of the Marital Settlement Agreement were incorporated into the Judgment of Legal Separation.

[¶ 6.] Tristina moved back to Rapid City with her daughter, Taylor. She is employed with Regional West Center for Behavioral Health as a Registered Nurse and Clinical Education Coordinator. Even though she earns $50,872 per year, Tristina and Taylor live with Tristina's parents due to her financial obligations to Todd.

[¶ 7.] Todd has been domiciled in California since the legal separation was entered into. He has not worked since December 1989. He was involved in an automobile accident in August 1992 and claims that his inability to work stems from the accident. Tristina is unaware of any medical report which supports Todd's claim of inability to work. Therefore, she alleges that he is "voluntarily unemployed." Apparently, his only income is the alimony and child support payments from Tristina.

[¶ 8.] On January 16, 1996, Tristina filed for a divorce in Rapid City, South Dakota. Todd was personally served at his mother's home in Rapid City while he was visiting from California. In his answer, Todd denied that the court had jurisdiction over child support or custody issues and

---

1. Todd's attorney drafted the Marital Settlement Agreement. Tristina was not represented.

asserted that the doctrine of res judicata controlled all issues.

[¶ 9.] After some negotiations, Todd and Tristina signed a Stipulation and Agreement in January of 1997. This Stipulation, drafted by Tristina's present lawyer, recognized the parties' Marital Settlement Agreement:

> The parties acknowledge that they entered into a 'Marital Settlement Agreement' on June 16, 1994 and that subsequent to that agreement on October 25, 1994 a Judgment and Decree of Legal Separation was issued by the Superior Court of California, County of Contra Costa. The Agreement was based upon facts and circumstances then existing and contained provisions relating to custody, support, property and debt division.

The purpose of the Stipulation was to secure a divorce in South Dakota and to allow Tristina to litigate whether the jurisdiction clause, Section F, of the Marital Settlement Agreement was binding:

> The parties stipulate and agree that Plaintiff herein, Tristina Weekly, [sic] will be allowed to argue to the Court that the Jurisdiction provision should not be incorporated in the final agreement, notwithstanding the other terms of the Marital Settlement Agreement. Defendant herein, Todd Weekley, will be allowed to argue that whether or not the jurisdiction remains in California, he is entitled to the benefits of the provision relating to attorney's fees. *The parties will present argument to the Court and agree to be bound by the Court's decision on that provision. All other provisions of the Marital Settlement Agreement shall be incorporated and become a Judgment of this Court as a part of the final Judgment and Decree of Divorce.* Neither party waives any rights they may have to seek a subsequent modification, appropriate under the law, of any of the terms of the agreement as

incorporated into the Judgment and Decree of Divorce.

(emphasis added).

[¶ 10.] After the parties submitted briefs and gave oral arguments, the trial court held that Section F did not violate public policy and was binding. On December 16, 1997, a Judgment and Decree of Divorce was entered granting the parties a divorce on the grounds of irreconcilable differences. The divorce decree incorporated the Stipulation, which partially incorporated the Marital Settlement Agreement, and specially incorporated Section F. This order was not appealed.

[¶ 11.] On August 24, 1998, Tristina filed a "Verified Motion to Modify Child Support and to Eliminate Alimony." Todd was personally served on August 26, 1998 again at his mother's home in Rapid City while he was visiting from California. In response, Todd filed a motion to dismiss on September 10, 1998.

[¶ 12.] On September 23, 1998, the trial court granted Todd's motion to dismiss the modification of child support, but denied his motion to dismiss Tristina's motion to eliminate alimony. Tristina appeals raising one issue:

> Whether the trial court erred in granting Todd's motion to dismiss the proposed modification of child support.

Todd filed a notice of review pursuant to SDCL 15–26A–22 and raises one issue:

> Whether the trial court erred when it denied his motion to dismiss Tristina's proposed modification of alimony.

Tristina also made a timely motion for an award of appellate attorney fees in the amount of $4,864.62.

## STANDARD OF REVIEW

A motion to dismiss under SDCL 15–6–12(b) tests the legal sufficiency of the pleading, not the facts which support it. For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader. 'Our

standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment – is the pleader entitled to judgment as a matter of law?' *Steiner v. County of Marshall*, 1997 SD 109, ¶ 16, 568 N.W.2d 627, 631 (quoting *Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592) (internal citations omitted). Furthermore, "[c]ontractual stipulations in divorce proceedings are governed by the law of contracts. The interpretation of a contract is a matter of law for a court to decide." *Beermann v. Beermann*, 526 N.W.2d 127, 129 (S.D.1995) (quoting *Estate of Thomas v. Sheffield*, 511 N.W.2d 841, 843 (S.D.1994) (quoting *Seablom v. Seablom*, 348 N.W.2d 920, 924 (N.D. 1984))).

**[¶ 13.] 1. WHETHER THE TRIAL COURT ERRED IN GRANTING TODD'S MOTION TO DISMISS THE PROPOSED MODIFICATION OF CHILD SUPPORT.**

[¶ 14.] Tristina strenuously argues that South Dakota, not California, has jurisdiction to modify the child support order. She claims that when Todd signed the Stipulation, he agreed to allow South Dakota to enter child support and alimony orders. She further argues that the Uniform Interstate Family Support Act (UIFSA) does not apply to this case for three reasons: (1) Todd did not object to the South Dakota trial court entering a support order; (2) neither the Stipulation nor the Marital Settlement Agreement reserves the question of child support to California courts; and (3) the California child support order was terminated when the Decree of Legal Separation was entered. Alternatively, she argues that if UIFSA did apply, South Dakota still has jurisdiction because Todd consented and waived California's continuing, exclusive jurisdiction.

[¶ 15.] Todd argues that Section F of the Marital Separation Agreement is binding, as determined by the trial court when the divorce was granted. Furthermore, the California court is the issuing tribunal because it entered a child support order which was incorporated into the Judgment of Legal Separation. He also asserts that he did not consent to a change in jurisdiction for the child support order. Thus, UIFSA applies and California has continuing, exclusive jurisdiction over child support.

[¶ 16.] UIFSA has been adopted in both California and South Dakota. *See* CAL. FAM.CODE 4900–4976; SDCL ch. 25–9B. Under UIFSA, the state issuing a child support order retains continuing, exclusive jurisdiction:

(1) As long as [the state issuing the order] remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until [each party has] filed written consent[ ] with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

CAL. FAM.CODE 4909; SDCL 25–9B–205. An application of the facts to the law leads to only one conclusion – UIFSA applies to this case.

[¶ 17.] California was the only tribunal to enter a child support order in this case. The Marital Separation Agreement was signed by both parties and ordered Tristina to pay Todd $330 per month in child support. The California court entered a Judgment of Legal Separation which incorporated the terms of the Marital Separation Agreement. The South Dakota trial court did not enter its own child support order, as Tristina argues. To the contrary, it found that child support was an "issue regarding the minor child" and, therefore, fell under Section F of the Marital Settlement Agreement which reserved such issues to the jurisdiction of California courts.[2] Thus, California is the issuing

---

2. The South Dakota trial court also held, in 1997, that Section F was binding and did not

tribunal and full faith and credit is to be afforded to its orders.

[¶ 18.] Todd is still domiciled in California and he did not consent to South Dakota entering a child support order. Upon signing the Stipulation, Todd agreed to allow Tristina to litigate whether Section F was a violation of public policy; he did not expressly or implicitly consent to waive California's continuing, exclusive jurisdiction over child support:

> The parties stipulate and agree that that Plaintiff herein, Tristina Weekly, [sic] will be allowed to argue to the court that the Jurisdiction provision should not be incorporated in the agreement.... The parties will present argument to the Court and agree to be bound by the Court's decision on that provision.

The trial court found Section F to be binding and specifically incorporated it into the divorce decree. Thus, in accordance with their own Stipulation, the parties bound themselves to the trial court's determination that California has jurisdiction over the child support issue. Furthermore, written consent to change jurisdiction over child support must be filed with the tribunal of the state that issued the original child support order, which is California in this case. CAL. FAM.CODE 4909(a)(2); SDCL 25–9B–205(a)(2). That was not done. Therefore, pursuant to Section F of

violate public policy. Tristina did not appeal that decision.

3. The dissent improperly claims that two child support decrees have been entered in this case. Two child support orders could not have been entered in this case. The trial court unequivocally stated that, pursuant to Section F of the Marital Settlement Agreement, it did not have jurisdiction over the issue of child support; instead, California had continuing, exclusive jurisdiction. The trial court did not request to see financial documents of the parties nor were there discussions of applying the child support guidelines. If the trial court did enter an order, why would Tristina, the custodial parent who was paying child support to the non-custodial parent and who was residing with her parents, wait nine months before asking for a modification? The answer is simple – she waited

the Marital Separation Agreement, the Stipulation and UIFSA, California has continuing, exclusive jurisdiction to modify the child support order it entered.[3] SDCL 25–9B–205(d). *See also Freeman v. Sadlier*, 1998 SD 114, ¶ 10, 586 N.W.2d 171, 173–74 (holding that the trial court's attempt at modification of a Utah child support order, which was registered in South Dakota, was nullified due to lack of subject matter jurisdiction pursuant to UIFSA).

[¶ 19.] We recognize that Tristina may have entered into a "bad bargain" when she signed the Marital Settlement Agreement. However, "it is not the role of courts in modification proceedings to relieve a party of his or her bad bargain." *Jameson v. Jameson*, 1999 SD 129, ¶ 20, 600 N.W.2d 577 (citing *Olson v. Olson*, 1996 SD 90, ¶ 11, 552 N.W.2d 396, 399; *Whalen v. Whalen*, 490 N.W.2d 276, 283 (S.D.1992); *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5, 7 (S.D.1976) (*Jameson I*)).

[¶ 20.] **2. WHETHER THE TRIAL COURT ERRED WHEN IT DENIED TODD'S MOTION TO DISMISS TRISTINA'S PROPOSED MODIFICATION OF ALIMONY.**

[¶ 21.] The California Judgment of Legal Separation incorporated the parties'

because the trial court did not enter an order that she could modify.

> Assuming, for the sake of the dissent's argument, the trial court did enter a second child support order, it would have violated UIFSA. Therefore, pursuant to South Dakota law, it would have been declared void. *See Freeman v. Sadlier*, 1998 SD 114, ¶¶ 9–10, 586 N.W.2d 171, 173–74 (holding that the requirements under UIFSA were not met; therefore, a South Dakota judgment modifying a Utah child support order was declared void). Either way, California has continuing, exclusive jurisdiction over this child support order. A South Dakota court is prohibited from modifying the child support order of a court that maintains continuing, exclusive jurisdiction. Full Faith and Credit for Child Support Orders Act, 28 USC § 1738B (West Supp.1999).

Marital Separation Agreement which obligated Tristina to pay Todd $570 per month in alimony. This agreement was subsequently incorporated into the South Dakota divorce decree. Todd argues UIFSA also governs this alimony order that was entered in California. UIFSA states: " '[s]pousal-support order' means a support order for a spouse or former spouse of the obligor." Cal. Fam.Code 4901(18);. SDCL 25–9B–101(22). It further states:

> A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a spousal support order throughout the existence of the support obligation. A tribunal of this state may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state.

Cal. Fam.Code 4909(f); SDCL 25–9B–205(f). Todd claims that South Dakota never rendered its own alimony order, instead, it recognized the California order by incorporating it in the divorce decree. Therefore, he concludes that California retains continuing, exclusive jurisdiction over the alimony order.

[¶ 22.] Tristina argues that the California court lost its jurisdiction by the agreement of the parties and the subsequent entry of the divorce decree. She explains that once South Dakota entered the divorce decree, California's legal separation was superseded and no longer valid.

[¶ 23.] Todd is partially correct in arguing that UIFSA applies to spousal support orders. However, it does not apply in this instance.

[¶ 24.] It is undisputed that Tristina agreed, in the California legal separation documents, to pay $570 each month to Todd for support "continuing until the death of either party, remarriage of Husband, or further order of Court, whichever occurs first." It is also undisputed that the parties voluntarily read and signed the Stipulation. This document provided: "All other provisions [excepting Section F] of the Marital Settlement Agreement shall be incorporated and *become a Judgment of this Court* as a part of the final Judgment and Decree of Divorce." (emphasis added). Therefore, Todd consented to South Dakota's assumption of jurisdiction over all issues except those "issues regarding the minor child." In contrast to child support, consent waiving jurisdiction over spousal support does not need to be provided to the issuing tribunal. *See* Cal. Fam.Code 4909; SDCL 25–9B–205.

[¶ 25.] By incorporating the alimony provisions into the divorce decree, the alimony merged into and became a judgment of a South Dakota court, just as the parties expressly intended. *See generally Beermann*, 526 N.W.2d at 129 (recognizing "a divorce decree which incorporates a property settlement agreement is a final and conclusive adjudication ..."); *Larsgaard v. Larsgaard*, 298 N.W.2d 381, 383 (S.D.1980) (stating that "[m]odification of support agreements can be ordered even though the original judgment was based upon a stipulation between the parties"); *Jameson I*, 239 N.W.2d at 7 (approving of the incorporation of a stipulation and agreement into the divorce decree). Thus, the Marital Separation Agreement is extinguished and the divorce decree is the final dispositive order regarding alimony. Todd did not appeal the incorporation of the California legal separation into the South Dakota divorce decree; in fact, he consented to it when he signed the Stipulation. Therefore, alimony is modifiable only in South Dakota:

> It is well settled in this state that a divorce court has continuing jurisdiction over its decrees for alimony, separate maintenance, and custody and support of children. An application for modification or enforcement of such decree is a supplementary proceeding incidental to the original suit. It is not an independent proceeding or the commencement of a new action.

*Hershey v. Hershey*, 467 N.W.2d 484, 486 (S.D.1991) (quoting *Eggers v. Eggers*, 82 S.D. 675, 679, 153 N.W.2d 187, 189 (1967) (citations omitted)).

[¶ 26.] We affirm both Issues 1 and 2.

[¶ 27.] Tristina also made a motion for an award of appellate attorney fees. She submitted an affidavit and itemized statements reflecting her attorney fees and costs incurred to be $4,864.62. *See Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). In deciding whether a party is entitled to appellate attorney fees, we consider the "property owned by each party, their relative incomes, the liquidity of the assets, and whether either party unreasonably increased the time spent on the case." *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994) (quoting *Caughron v. Caughron*, 418 N.W.2d 791, 794 (S.D.1988) (citation omitted)). Considering these factors in this case, Todd shall pay $2,000 to Tristina for attorney fees.

[¶ 28.] KONENKAMP and GILBERTSON, Justices, concur.

[¶ 29.] MILLER, Chief Justice, and AMUNDSON, Justice, concurs in part and dissents in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 30.] This is a highly anomalous case. Here, the custodial parent is being forced to pay child support to the non-custodial parent, thereby precluding her from being able to afford a home for their child. It is axiomatic that child support is paid by the non-custodial parent to the custodial parent, to be used to defray the expenses of caring for and raising their child. Why is it in this case, then, that our law would allow the custodial parent and her child to remain dispossessed, so that the non-custodial parent can receive his $330 monthly child support allotment?

## [¶ 31.] SECTION F – THE JURISDICTIONAL PROVISION

[¶ 32.] Tristina has continuously argued that Section F applies only to child custody and visitation issues and not to child support. Tristina asserts that when the South Dakota trial court decided in December 1997 that Section F was not violative of public policy, that decision only bound jurisdiction of child custody and visitation matters to California. The court's decision did not affect jurisdiction to decide child support matters. Therefore, when the trial court entered its Judgment and Decree of Divorce on the same date, it issued a valid new South Dakota child support order. She relies on the following phrase from the Stipulation and Agreement (Stipulation) that was incorporated in the divorce decree:

> [I]t is further ORDERED, ADJUDGED AND DECREED that the Stipulation and Agreement signed by the Plaintiff on the 13th day of January, 1997, and the Defendant on the 7th day of January, 1997, which Stipulation is attached hereto as Exhibit "1," be and the same hereby is, incorporated herein by this reference as though fully set forth at length and each provision thereof *shall be enforceable as an Order of this Court.*

(Emphasis added.)

The purported South Dakota child support order created by the divorce decree is the one which Tristina now seeks to modify.

[¶ 33.] We agree with Tristina that Section F clearly is only intended to apply to child custody and visitation issues. The trial court's statement on September 23, 1998, that "the issue regarding child support shall remain with California as it is a matter relating to 'issues regarding the minor child'" (quoting Section F), is not supported by the record. What the record does show from the circumstances surrounding its execution is that Section F was intended to apply only to custody and visitation issues, not child support issues.

[¶ 34.] Concerning the interpretation of divorce stipulations, we have stated:

Divorce stipulations are governed by the rules of contract; their interpretation is a matter of law for the courts to decide. *Houser v. Houser*, 535 N.W.2d 882, 884 (S.D.1995). In *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985) (quoting *Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955)), we set forth the procedure for analyzing a property settlement agreement:

First, in determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties. *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D.1982); *Johnson v. Johnson*, 291 N.W.2d 776 (S.D. 1980); *Huffman v. Shevlin*, 76 S.D. 84, 72 N.W.2d 852 (1955). In determining the intention of the parties, a court must look to the language that the parties used. *Johnson v. Johnson, supra; Berry v. Benner*, 81 S.D. 610, 139 N.W.2d 285 (1966).

. . .

If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties. *Janssen v. Muller*, 38 S.D. 611, 162 N.W. 393. The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court.

*Hisgen v. Hisgen*, 1996 SD 122, ¶ 4, 554 N.W.2d 494, 496. In addition, "'Ambiguities arising in a contract should be interpreted and construed against the scrivener.'" *Campion v. Parkview Apartments*, 1999 SD 10, ¶ 34, 588 N.W.2d 897, 904 (quoting *Production Credit Ass'n v. Wynne*, 474 N.W.2d 735, 740 (S.D.1991) (other citations omitted)). "'This is a rule of construction to be applied against one who drafted an ambiguous contract.'" *Id.*

"'Any doubts arising from an ambiguity of language in a contract should be resolved against the speaker or writer, because he can, by exactness of expression, more easily prevent mistakes in meaning than the one with whom he is dealing.'" *Id.*

[¶ 35.] As proof that Section F only applies to custody and visitation issues, Tristina points to its location within the "Marital Settlement Agreement" (Agreement). The Agreement is arranged as follows:

COMMUNITY PROPERTY

DIVISION OF COMMUNITY PROPERTY

EQUAL DIVISION OF PROPERTY

DIVISION OF OBLIGATIONS

CHILD CUSTODY AND VISITATION

    A. Custody

    B.   Residence

    C.   Time Share

    D.   Visitation

    E.   Changes to Schedule

    F.   Jurisdiction

    G.   Transportation

    H.   Child Care

MEDICAL COVERAGE

CHILD SUPPORT

SPOUSAL SUPPORT

INCOME TAX RETURNS

ATTORNEY'S FEES AND COSTS

GENERAL PROVISIONS

    A. Execution of Documents

    B.   Future Acquisitions

    C.   Future Debts

    D.   Waiver of Inheritance

    E.   Reconciliation

    F.   General Release

    G.   Preparation of Agreement

    H.   Dissolution of Marriage Action

    I.   Divisibility of Provisions

    J.   Attorney's Fees and Costs

    K.   Finality of Agreement

[¶ 36.] The Agreement, with its disputed Section F, was drafted by Todd's attorney

in California. In fact, a section of the Agreement reads:

G. Preparation of Agreement

This agreement has been prepared by Robert G. Nykodym, Attorney for Husband, who advises and informs Wife that he acts solely as counsel for Husband and does not advise or represent Wife in this settlement. Wife hereby acknowledges the fact that she has the right to secure independent counsel to represent her. However, Wife chooses to proceed with the signing of this agreement without consultation with independent counsel of her choosing. Wife has carefully read this agreement, fully understanding its terms and willingly signs it.

[¶ 37.] The Stipulation signed by both parties in January 1997 allowed Tristina to litigate whether Section F was binding. As part of that litigation, both parties submitted briefs to the court, and they are part of this record. The briefs submitted by the parties clearly indicate the issue was whether Section F was intended to apply to custody issues, not support issues. The initial brief submitted by Tristina was entitled, "Applicability of PKPA/UCCJA," [4] and discussed both of these custody-related statutes at length. Todd's brief was likewise entitled, "Defendant's Brief on Applicability of PKPA/UCCJA," and presented an analysis of those two custody statutes in the context of this case. Tristina also submitted a "Plaintiff's Reply Brief on Applicability of PKPA/UCCJA." In that document, she clarified to the court that: "The jurisdictional issue in dispute in this litigation is in the section called, 'Child Custody and Visitation.' This Court's jurisdiction over other matters to be covered in the Judgment and Decree of Divorce, such as child support, are not and cannot be in dispute."

[¶ 38.] In hindsight, proceeding without the advice of an attorney might not have been the best strategy for Tristina. However, the fact remains that Todd drafted the Agreement, and he was in the best position to impart an exactness of expression and prevent mistakes. The jurisdictional provision was located under the general heading dealing with "Child Custody and Visitation," not under "Child Support" or elsewhere as a general provision in the Agreement. In relation to the other provisions in the document, it is apparent that Todd intended the jurisdictional provision to only apply to child custody. Otherwise, he surely could have placed it elsewhere in the document. Since he was in the best position to impart an exactness in expression, but failed to do so, he cannot now claim that he intended that the jurisdictional provision would apply to issues of child support.

[¶ 39.] In addition to the arrangement of the Agreement, there is a more pragmatic reason that Section F cannot apply to issues of child support in this case. At the time the Agreement was drafted and signed in June of 1994, California and South Dakota both had URESA,[5] rather than UIFSA, as the controlling law over issues of interstate child support arrangements. URESA recognizes the entry of more than one valid child support judgment throughout the several states. *See In re Marriage of Taylor,* 122 Cal.App.3d 209, 175 Cal.Rptr. 716, 719–20(1981) (URESA's purpose is not to minimize or curtail effects of valid judgment of the several states even though they are participants in URESA); *One Controlling Order,* [October 1997] 5 FamL & Prac (Mat-

---

**4.** PKPA is the acronym for the "Parental Kidnapping Prevention Act," 28 USC § 1738A. UCCJA stands for the "Uniform Child Custody Jurisdiction Act," codified at SDCL ch 26–5A.

**5.** URESA is the acronym for "Uniform Reciprocal Enforcement of Support Orders Act."

URESA and its revision, the Revised Uniform Reciprocal Enforcement of Support Orders Act (RURESA), were in effect in California until January 1, 1998, when UIFSA was enacted. UIFSA became effective in South Dakota on July 1, 1994.

thewBender & Co) § 48.03[3][b] (April 1999) ("Support orders entered under URESA exist independently, often resulting in multiple, conflicting orders governing the same parties and children ..."). Therefore given URESA's tolerance for multiple child support orders, it is unlikely that the California attorney who drafted the Agreement for Todd in 1994 would have intended to reserve jurisdiction over child support issues solely to California. This is especially likely, given that both parties were aware Tristina intended to move their daughter to South Dakota immediately upon signing the document. The fact that the law in effect at the time the Agreement was signed allowed the issuance of more than one child support order, serves as further proof that the parties intended Section F to apply only to the custody and visitation issues of their minor child.

[¶ 40.] Under the circumstances presented, it is clear the trial court's December 1997 ruling that Section F did not violate public policy only applied to issues of child custody, and not to issues of child support. The expansion of that ruling with the court's September 1998 statement that, "the issue regarding child support shall remain with California as it is a matter relating to 'issues regarding the minor child' " (quoting Section F), was not supported by the extrinsic circumstances surrounding the execution of the writing, nor was it supported by a review of the Agreement in its entirety.

[¶ 41.] The trial court expressed concern about the public policy ramifications of bifurcating the child custody jurisdiction from child support jurisdiction. While this is a legitimate concern, it has not prevented other state courts from splitting custody jurisdiction from support jurisdiction. *See In re Marriage of Tonnessen,* 937 P.2d 863 (Colo.App.1996) (Colorado has jurisdiction over marriage dissolution and other ancillary matters, but Arizona has jurisdiction over child custody issues.); *In re Marriage of Abu–Dalbouh,* 547 N.W.2d 700 (Minn.App.1996) (Because UCCJA and UIFSA operate under different standards, it is not anomalous to award custody jurisdiction over all three children to one parent, but to award child support as to only one.); *Chaisson v. Ragsdale,* 323 Ark. 373, 914 S.W.2d 739 (1996) (UIFSA is intended only for child support issues; other issues such as visitation should therefore be decided either in the forum that granted the divorce or in the state where the custodial parent and the child reside.); and *Schuyler v. Ashcraft,* 293 N.J.Super. 261, 680 A.2d 765 (N.J.Super.Ct.App.Div.1996) (Although New Jersey can assert jurisdiction over custody and visitation matters under UCCJA and PKPA, it cannot assert jurisdiction over child support.), *certification den'd,* 147 N.J. 578, 688 A.2d 1054 (N.J. 1997).

[¶ 42.] Even this Court has reasoned about the propriety of bifurcating child support and child custody jurisdiction:

> "While the custody issue may be decided in another state under the Uniform Child Custody Jurisdiction Act, we know of no legal or factual basis for the trial court's deference to the Massachusetts court on the issues of maintenance and child support. Rather, to the extent of its jurisdiction to do so, the court must consider those issues in connection with the dissolution."

Lustig v. Lustig, 1997 SD 24, ¶ 14, 560 N.W.2d 239, 245 (quoting In re Marriage of Doria, 855 P.2d 28, 30 (Colo.Ct.App. 1993)) (citations omitted).

[¶ 43.] Further, a provision in our own child custody statutes recognizes that a bifurcation of proceedings is sometimes necessary: "The court may decline to exercise its jurisdiction under this chapter if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding." SDCL 26–5A–7. *See also Lustig,* 1997 SD 24, ¶ 13, 560 N.W.2d at 243–44 ("This statute permits a court to either dismiss a 'custody proceeding,' or decline jurisdiction over a

'custody determination,' but retain jurisdiction on other divorce issues.").

[¶ 44.] I would therefore hold that the trial court erred in ruling that Section F applied to the child support issue in this case.

## [¶ 45.] TWO CHILD SUPPORT DECREES HAVE BEEN ISSUED

[¶ 46.] I agree with the majority that by entering its Judgment and Decree of Divorce in December 1997, South Dakota created a new *alimony* support order. However, I take the majority reasoning one step further, and assert that the South Dakota court also created a new *child support* order when it entered the divorce decree.

[¶ 47.] As explained previously, the jurisdictional provision of Section F was improperly expanded by the trial court. Section F only applies to issues of child custody and not to issues of child support. Thus, when the trial court entered the divorce judgment, such judgment was only limited in its application to child custody issues. As to all other collateral issues, such as child support, alimony and property division, the new South Dakota judgment applied.

[¶ 48.] Like the provision governing alimony, the Agreement provision governing child support states that Tristina would pay Todd $330 per month in child support, "until the child attains age 18 and is not a full-time high school student residing with a parent, or attains age 19, or marries, dies, is emancipated, *or further order of the Court*, whichever occurs first." (Emphasis added.) The Stipulation signed by both parties further provided that the Agreement would be "incorporated and become *a final judgment of this Court* as a part of the final Judgment and Decree of Divorce." (Emphasis added.) Since Section F is properly limited to only issues dealing with child custody, the subsequent entry of the child support provision as part of the divorce judgment in South Dakota created a second child support order.

[¶ 49.] It must be conceded that the entry of a second child support order was arguably done in contradiction of UIFSA and the Full Faith and Credit for Child Support Orders Act, or "FFCCSOA."[6] However, as the majority notes, Todd did not appeal the entry of the divorce judgment, which gave South Dakota jurisdiction over other collateral matters. Further, given the equities of this case (that a custodial parent is being forced to pay the non-custodial parent child support, and as a result is unable to provide the child with her own home), and the purpose behind such legislation as UIFSA and FFCCSOA, "to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child," Full

---

6. A provision of UIFSA, located at SDCL 25–9B–204(a), states:

A tribunal of this state may exercise jurisdiction to establish a support order if the petition or comparable pleading is filed after a pleading is filed in another state only if:

(1) The petition or comparable pleading in this state is filed before the expiration of the time allowed in the other state for filing a responsive pleading challenging the exercise of jurisdiction by the other state;

(2) The contesting party timely challenges the exercise of jurisdiction in the other state; and

(3) If relevant, this state is the home state of the child.

Further, SDCL 25–9B–205(d) provides: "A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to a law substantially similar to this chapter."

Finally, a provision of FFCCSOA at 28 USC § 1738B(a) directs:

(a) General rule.—The appropriate authorities of each State—

(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and

(2) shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (i).

Faith and Credit for Child Support Orders Act, PubLNo 103–383, § 2(c)(2), 108 Stat 4063, 4064 (1994), such entry of a second child support order is justified.

[¶ 50.] Since there are two child support orders in existence, they must be reconciled via SDCL 25–9B–207. That statute provides in pertinent part:

(b) If a proceeding is brought under this chapter, and two or more child support orders have been issued by tribunals of this state or another state for the same obligor and child, a tribunal of this state shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:

(1) If only one of the tribunals would have continuing exclusive jurisdiction under this chapter, the order of that tribunal is controlling and must be recognized.

(2) If more than one of the tribunals would have continuing, exclusive jurisdiction under this chapter, an order issued by a tribunal in the current home state of the child must be recognized, but if an order has not been issued in the current home state of the child, the order most recently issued is controlling and must be recognized.

[¶ 51.] Whether a state has "continuing, exclusive jurisdiction" is determined by whether it is the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued. SDCL 25–9B–205(a)(1). Here, both California and South Dakota would have continuing exclusive jurisdiction, since Todd resides in California, and Tristina and their daughter reside in South Dakota. According to subsection (2) above, in such situations, an order issued by a tribunal in the current home state of the child must be recognized as the one having continu-

ing, exclusive jurisdiction. In this case, the child has lived in South Dakota for five and one-half of her nine years; undoubtedly it is her home state. Under this analysis, then, South Dakota must be recognized as the state having continuing, exclusive jurisdiction over child support issues.

[¶ 52.] I recognize there is a case recently decided by this Court that upholds the majority position in this case. However, it can and should be distinguished. In *Freeman v. Sadlier*, 1998 SD 114, ¶¶ 7–10, 586 N.W.2d 171, 172–74, we held the trial court erred in modifying a Utah child support order. In that case, the custodial parent and the child lived in South Dakota, and the non-custodial parent lived in Utah. There we held, despite the non-custodial parent's failure to appeal the modification entered by the South Dakota court, subject matter jurisdiction to modify the order had not been conferred, because jurisdictional questions have no time limitations. *Id.*

[¶ 53.] In *Freeman,* unlike the present situation, the custodial parent was the obligee, and was seeking an increase in child support from the obligor. Here, the custodial parent is also the obligor, and since the obligee does not have custody of the child, the custodial parent is seeking a reduction in her obligation. As stated previously, it is axiomatic that the non-custodial parent pays child support to the custodial parent, not vice versa. For this reason, I would limit our previous holding in *Freeman* to those (more common) situations where the obligee is the custodial parent and the obligor is the non-custodial parent. Because the case before us is an anomaly (the custodial parent is also the obligor), in my opinion equity demands that South Dakota, as the home state and residence of the child, retain jurisdiction over child support matters. Although Tristina Weekley may have made a "bad bargain" in the dissolution of her mar-

riage, I believe it incumbent upon our justice system to rectify the situation as much as allowed within the confines of the law.

[¶ 54.] For these reasons, I would hold the trial court erred in granting Todd's motion to dismiss the proposed modification of child support.

[¶ 55.] AMUNDSON, Justice, joins this special writing.